W. H. POTTS, Respondent, *v.* THE WABASH, ST. LOUIS & PACIFIC RY. CO., Appellant.

April 13, 1885.

1. COMMON CARRIERS—CONTRACTS LIMITING COMMON LAW LIABILITY— VALID, EXCEPT AS AGAINST EXEMPTION FROM NEGLIGENCE.—The parties to a contract for shipment, the carrier and the shipper, may, by contract, limit the common law liability of the carrier

in everything not trenching on the requirements of a just public policy; and in some jurisdictions these special contracts may extend to exemptions of the carrier and servants from their own negligence; but *in this state,* and most others in America, a stipulation of exemption for negligence is void and against public policy.

2. Same—Duty as to the Furnishing of Vehicles—Character of of Means of Transportation Required of Them.—It is a primary duty of a common carrier to furnish vehicles suitable in every respect, including strength and mode of construction for the safe transportation of such property as is usually carried by them.    The very fact of holding themselves out as engaged in such business implies that they are prepared in all ways to carry safely and securely.  But they may relieve themselves from duties otherwise due by reasonable contracts, and among others those connected with the shipping of live stock, but they must, nevertheless, provide safe and secure cars, or other modes of transportation; and it is then their imperative duty to do so from the necessities of their calling.—Hutchinson on Carriers, 292; Story on Bailments, sects. 509, 532, 592.  And a contract, though signed by the shipper, agreeing to release the carrier, will not exonerate him from resulting damage or from his implied duty to furnish suitable means to safely transact his business.—*Railroad Co.* v. *Pratt,* 22 Wallace (U. S.) 628; *R. R. Co.* v. *Strain,* 81 Ill. 504. The shipper is not to judge of the sufficiency of the cars, but the carrier must, and responsibility rests on him.—*Sloan* v. *St. L., K. C. & N. Ry. Co.,* 58 Mo. 220.

Appeal from Audrain Circuit Court, Hon. Elijah Robinson, Judge.

*Affirmed.*

Statement of the case by the court.

This was an action instituted before S. W. Bickley, justice of the peace in Salt river township, Audrain county, Missouri, to recover the sum of $48.40, damages on account of loss of two of plaintiff's cattle out of a freight car, while in transit upon the railroad of defendant, between Centralia and St. Louis, in the month of October, 1881.

Plaintiff states that defendant carelessly and negligently placed and loaded said nineteen head of cattle in an old and dilapidated car, which said car was badly broken at the ends, and was unsafe and insufficient for

the purpose of safely carrying said cattle. That the condition of said car was well known to defendant at the date aforesaid, and, although requested, defendant refused to repair said car, or furnish other cars.

The evidence on the part of plaintiff as to the contract for the car is as follows:

W. H. Potts, plaintiff, testified: "I am the plaintiff. On the 25th of October, 1881, I shipped nineteen head of cattle over the Wabash Railway from Centralia to St. Louis. I put my cattle in the stock pens about three o'clock in the afternoon of that day. I loaded them about 9:30 P. M. into the only stock car there at the time. Bud Crawson and a colored man named Henry Davis helped me load. I counted nineteen head into the car. Crawson told me the end of the car was broken. I found that three slats were broken off. I told the agent I wanted another car; but he told me to let it go to hell. I got some nails and tried to fix the car by nailing some slats over the broken place. The train left about three-quarters of an hour after I loaded. Only seventeen cattle arrived in St. Louis. I sold them at about an average of $24.20 per head; I think those that were lost were as good as the average. I put in my claim for the cattle, in writing, immediately after discovering the loss. It was afterwards returned to me refused."

Cross-examination: "I put my cattle in the Wabash pens as soon as I arrived in Centralia with them. I intended to ship over the Wabash, but had made no arrangements for a car before I got there. I wanted to ship to the Union Yards, but the agent said he could not give me a car to them, but he could to the National Yards. The car that I put my cattle into was the only stock car there. It was left there by the way-freight going west after five o'clock. After the agent refused to fix the car, I asked him for a hatchet and some nails, and told him I would try and fix the car. I went with the car to St. Louis. I was told at Montgomery City that some cattle were getting out of the car, but it was too dark then to see. I noticed that the car wasn't full, and that the slat I had nailed on was

broken down. I put in a claim for two cattle as soon as I arrived at St. Louis. Irons and Cassiday's agent went with me to the Wabash office and made the claim for me. I don't know what office it was. The agent told me he would look the matter up. I signed the contract shown me."

Defendant introduced in evidence a live stock shipping contract, that portion of which, thought to be applicable to this case, is as follows: "The party of the second part further agrees to release, and does hereby release the party of the first part and connecting lines, from all claim of damage or injury to, or loss of said live stock from any defects in the doors of said cars, or the fastenings, and also from any injury to said stock caused from defects in the slats on said cars, or from the manner in which said slats are placed on said cars, and from all injuries which said stock may sustain from kicking or goring each other while in said car, or from kicking their feet through the slats or sides of said car."

The court of its own motion gave the following instructions:

1. If the court believes from the evidence in the case that the plaintiff's cattle were shipped under the contract read in evidence, then, unless the court further believes from the evidence in this case that a claim for the loss of said two cattle was made in writing, verified by the affidavit of plaintiff or his agent, and delivered to the general freight agent of defendant at his office in St. Louis, within five (5) days from the time said cattle were removed from the cars of defendant, the verdict must be for the defendant, unless it further appears from the evidence in the case that defendant received plaintiff's claim in some other manner than that specified, within five days, and at the time made no objection to the manner in which it received notice thereof.

2. The court declares the law to be that if plaintiff's cattle were shipped under the contract read in evidence, and that the car in which they were shipped was defective, and that such defects were known to plaintiff before

his cattle were moved from Centralia, and that said two cattle escaped, or were lost by reason of such defects, then the verdict must be for the defendant, unless it further appears from the evidence that the defendant's agent at Centralia was notified of the defective condition of said car after said cattle were loaded and before they were moved from Centralia. If defendant knew of the defective condition of said car before leaving Centralia, and, notwithstanding, shipped the cattle in such defective car, then it took the risk of the loss resulting therefrom.

3. If the court believes from the evidence in the case, that plaintiff's cattle were shipped under the contract read in evidence, and at the time said cattle were loaded there was only one stock car at Centralia, and that the same was out of repair, and was known to be so before the cattle were removed from Centralia, and that plaintiff then allowed his cattle to be moved in said car, and said cattle were lost by reason of such defects, then the verdict must be for defendant, unless the court believes that plaintiff discovered said defect after the cattle were loaded, and notified defendant before they were moved from Centralia.

4. If the court believes from the evidence in the case, that plaintiff's cattle were shipped under a contract read in evidence, then plaintiff agreed that he would take care of said cattle while they were being transported, and that defendant should not be responsible for any loss, damage, or injury which should happen to said cattle while being forwarded, and if it believe that said two cattle were lost while being forwarded, then the verdict must be for the defendant, unless it further appears from the evidence that said cattle were lost by reason of defendant's carelessness and negligence.

To which action of the court, in giving said instructions defendant, by its counsel, duly excepted.

GEO. S. GROVER, for the appellant.

I. A common carrier, may, by special contract, limit its common law liability, except for negligence or miscon-

duct. And such contract must be taken as the sole evidence of such agreement.—*Dawson* v. *R. R.*, 67 Mo. 514; *R. R.* v. *Cleary*, 77 Mo. 634, and cases cited; *O'Brien* v. *Kenny*, 74 Mo. 125; *Grace* v. *Adams*, 100 Mass. 505; *R. R.* v. *Hall*, 58 Ill. 409.

II. Where the owner himself undertakes a part of the duties which would otherwise devolve on the carrier, the responsibility for results growing out of the discharge of these duties rests on the owner and the carrier is not liable in respect thereof.—Lawson on Cont. of Carriers, sect. 23, p. 22; *R. R.* v. *Hall*, 58 Ill. 410; *Betts* v. *Trust Co.*, 21 Wis. 87; *Ross* v. *R. R.*, 49 Vermont 364.

III. A party may always waive a right in his favor, created by statute, the same as any other. In this case he waived the right to a suitable and safe car.—Sedw. on Cons. and Stat. Law, p. 110; *Ellis* v. *Pacific R. R.*, 48 Mo. 231, and cases cited.

IV. The instructions given by the court were erroneous. There was no evidence to support the *first* given. The court ignored the plaintiff's act in undertaking to waive the furnishing of a safe and suitable car; it was erroneous because it singled out certain facts and directed a verdict, if they were found, regardless of other facts in issue. This has been held ground for reversal.—*Mead* v. *Brotherton*, 30 Mo. 201; *Iron Mound Bk.* v. *Murdock*, 62 Mo. 73, and cases cited. The same objection applies to the third and fourth instructions. There was no evidence of negligence or carelessness on defendant's part.

V. The court refused instructions which correctly declared the law applicable to the facts in evidence. The second instruction asked by defendant, referring to claim for loss, should have been given.—*Dawson* v. *R. R.*, 79 Mo. 514. So these numbered *third* and *fourth* asked by defendant should have been given. Under the whole case the *fifth* instruction asked by it was proper and its *sixth* was the undoubted law.

No brief on file for respondent.

Opinion by ELLISON, J.

Though this presents a case for our determination,

somewhat peculiar and not free from doubt, we are left without assistance from plaintiff's counsel, as he has not given us the benefit of his researches by filing a brief in the case. Its solution would not be attended with difficulty, were it not that a special contract is insisted on as being an exemption from liability on account of any loss arising from the condition of the car. And that plaintiff being aware of the condition of the car, nevertheless, attempted himself to remedy the defect and shipped his stock. ·

Recourse, however, to the principle upon which the obligation of a common carrier rests, will guide us to a proper conclusion

In the language of Judge Scott in 10 Ohio Stat. 65, the obligation of a carrier is: "At common law, as it has been long settled that the common carrier is responsible for the safe transportation and delivery of goods received by him for carriage, and can only justify or excuse a default when occasioned by the act of God or the public enemies, he is not only responsible for his own acts of misfeasance, malfeasance, and negligence in the course of his employment, but he is also regarded as an insurer against all loss or damage which may happen to goods whilst in his charge, for the purposes of his employment, though occasioned by unavoidable accident, or by any casualty whatever, except only as above mentioned. And the burden of proof is thrown upon him, in bringing any particular case within the exceptions. For, in the absence of proof, the loss itself raises the presumption of negligence on the part of the carrier."

This strict rule of law arose from necessity, and its wisdom is conceded. Yet it is held, that the parties, the carrier and shipper, may, by special contract, limit this liability in everything not trenching on the requirement of a just public policy. And while in some jurisdictions these special contracts may extend to exempting the carrier from negligence of himself or servant; it is considered in this state, and most others in America, that a stipulation of exemption for negligence is void and against public policy. So if we admit the contract in this

case, in terms, covers the absence of slats in the car furnished plaintiff, it was not competent for the parties to enter into such a stipulation of release. It is a primary duty of common carriers to furnish vehicles suitable in every respect, including strength and mode of construction, for the safe transportation of such property as is usually carried by them. The very fact of them holding themselves out as engaged in such business, implies that they are prepared in all ways, to carry on the traffic safely and securely. It is their duty to furnish patrons with vehicles of such strength, durability, and construction as to afford safe conveyance; and it is negligence of which they cannot relieve themselves not to do so. There is no legal objection to contracts reasonable in themselves, which relieve corporations of many onerous duties, otherwise to be performed. And so they may relieve themselves of many responsibilities connected with the shipping of live stock. Indeed a carrier would not be liable, in the absence of a contract, for an injury to animals resulting from their own inherent propensities. But the proposition that he shall provide himself with suitable, safe, and secure cars, or other mode of transportation, and that it is his first and imperative duty so to do, is not only one of reason arising from the necessity of his calling, but it is abundantly sustained by text writers and adjudications.—*Propeller Niagara* v. *Cordes*, 21 How. 23; *The Northern Belle*, 9 Wal. 526; *The C. & A. Ry. Co.* v. *Burke*, 13 Wend. 611; *Lyon* v. *Mells*, 5 East. 428; *Smith* v. *New Haven Ry. Co.*, 13 Allen 531; Hutchinson on Carriers, sects. 292–3; Angell on Carriers; Story on Bailments, sects. 509, 562, 592.

And a contract, though signed by the shipper, agreeing to release the carrier, will not exonerate him from resulting damage or from his implied duty to furnish suitable means to safely transact his business.— *Welsh* v. *Ry. Co.*, 10 Ohio St. 65; *I. B. & W. Ry. Co.* v. *Strain et al.*, 81 Ill. 504; *The C. & A. Ry. Co.* v. *Burke*, 11 Wend. 611; Story on Bailments, sect. 571 a.

And, so even if a carrier furnish defective vehicles,

even though they be cars for cattle, which cars the shipper himself sees, and which cattle he attends, the carrier is not exonerated from responsibility, even though there has been an agreement that he shall not be responsible. —*Railroad Co.* v. *Pratt*, 22 Wal. 123.

The authorities cited by defendant do not bear out its case. The case of the *I. C. R. R. Co.* v. *Hall* (58 Ill. 410), says: "The car of the Michigan Central was selected by one of the plaintiffs, he refusing to use the cars of the defendant. If hogs escape from the car by reason of any defect in them, or of the door fastenings, the defendant would not be responsible if it did not know of it when plaintiff selected them." So with the case of *Betts* v. *The F. L. & T. Co.* (21 Wis. 87); here the plaintiff did not inform the station agent of the company of the defect which he saw. If he had wished to hold the company he should have informed the station agent of the unsafe condition of the door. The case of *Hawkins* v. *G. W. R. R. Co.* (17 Mich. 63, and 18 Mich. 433) looks a little in the direction of plaintiff's view of the case. The court there says it is the duty of the company to furnish safe cars, and unless some showing was made that plaintiff knew of the defective condition and assented to the use of them, he was entitled to expect that suitable cars would be furnished. In the case before us, plaintiff did not "assent" to the use of this car; he protested; and as there was none other furnished on his demand, he allowed his cattle to be moved. He only used it from necessity of his situation. If, by the phrase "assented to the use of the car," the Michigan court intended to say that the use of them with knowledge of their condition would bar plaintiff's action, we do not agree that such would be the law. The court also says, that furnishing a defective car was negligence, and with us, as we have seen, a special contract will not relieve against negligence. In the case of *Miltimore* v. *C. & N. Ry. Co.* (37 Wis. 190), the car was not complained of, it was a safe and a proper one, but plaintiff assumed to load it with his covered wagon, and did not do so properly; this, of course, does not reach the question here.

So we regard the case of *Sloan* v. *The St. L. K. C. & N. Ry. Co.* (58 Mo. 220) as being against defendant's theory. There the court says: "Upon principle it would seem that it was the carrier's business to have vehicles suitable for the transportion of the hay, and if any loss occurred by reason of defects in the cars, the responsibility would rest on the carrier. But the shipper is not to judge whether the cars are sufficient. The carrier is the sole judge of sufficiency of the vehicles in which it is proposed to carry freight. It does not appear that the attention of the defendant was called to the deficiency in the cars, or that the defendant was requested to furnish others." This extract from the opinion, which was embodied in defendant's brief, we take to be a strong authority for plaintiff, for it is plainly stated to be the duty of the carrier to furnish suitable cars, and that the carrier, not the shipper, is to judge whether they are sufficient.

The instruction given by the court on the question of notice of the loss to the company was justified by the ruling of the Supreme Court of this state in analogous cases. Such stipulations in contracts while held to be reasonable and such as will be enforced, are not such but that the defendant may waive by words or conduct.

The judgment is, with the concurrence of the other judges, affirmed.