JOSEPH MASON, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, April 11, 1887.

1. COMMON CARRIER—DUTY OF AS TO FREIGHT, WHETHER INANIMATE, OR AS TO LIVE STOCK.—When the *delivery* of freight is made at the warehouse, or other place of business of the carrier, *for early transportation*, he becomes, the moment the delivery is made, a carrier as to the freight, and his responsibility, as such, at once attaches. In such cases the deposit is a mere accessory to the carriage, and does not postpone his liability, as a common carrier, to the time when they shall be actually put in motion towards their place of destination. The same principle is applicable to the shipment of live stock.

2. —— DUTY TO FURNISH SUITABLE MEANS TO SAFELY TRANSACT BUSINESS.—A carrier cannot exonerate himself from resulting damage by reason of a breach of his implied duty to furnish suitable means to safely transact his business; and this, though the cars are seen by the shipper, who also attends his stock. The rule is applicable, in principle, to the stock pens provided by carriers for the receiving of live stock.

APPEAL from Moberly Court of Common Pleas. HON. G. H. BURCKHARTT, Judge.

*Affirmed.*

The case and facts are stated in the opinion.

W. A. MARTIN, for the appellant.

I. The petition does not state a cause of action. It alleges the pen was unsafe, and that *defendant* knew it, but it nowhere alleges that the defects were unknown to plaintiff.

II. The court erred in overruling the demurrer to evidence, since it showed no legal liability against defendant.

III. The court erred in refusing the declarations of

law asked by defendant. Defendant is not liable as a common carrier in this case ; in fact, is not liable at all until the cattle are in its cars. In cases like this, if plaintiff knew of the defect, he cannot recover. *Railroad v. Hawkins*, 18 Mich. 427; *Botts v. Railroad*, 21 Wis. 80. The defendant had not received the cattle; they were in the possession of the plaintiff when the injury occurred, and no liability, as carrier, existed, and, in order to recover, plaintiff must show that *he* is not at fault, and *negligence* on the part of the defendant. 2 Rorer on Railroads, 1279. Plaintiff, by using the pen, knowing it was insecure, assumed the risk of his cattle being hurt thereby.

IV. Appellant had never *received* the cattle ; they had not been delivered for *shipment.* 2 Rorer on Railroads, 1279. Defendant is not a common carrier of live stock at common law. 2 Rorer on Railroads, 1296. Hence, had a right to *restrict its liability* by contract, especially to require shippers to load and unload their stock. 2 Rorer on Railroads, 1300 ; 1 Rorer on Railroads, 642 ; 86 Mo. 104 ; 18 Mich. 427 ; 21 Wis. 80 ; *Poles v. Railroad*, 16 N. Y. 481 ; *Railroad v. Snier*, 60 Ill. 295 ; 2 Rorer on Railroads, 1301, 1302 ; *Railroad v. McDonaugh*, 21 Mich. 165 ; 2 Rorer on Railroads, 1307 ; *Clark v. Railroad*, 64 Mo. 440. And the declarations of law, asked by the defendant, should have been given by the court. We submit the case should be reversed.

Hollis & Wiley, for the respondent.
I. It is as much the duty of defendant to provide safe pens for receiving live stock for shipment, as it is to provide a safe car to ship it in, or a safe depot for other freight. The only difference in the liability of a common carrier of *animals*, and that of a carrier of inanimate property, is, that the carrier does not absolutely warrant live freight against the consequences of its own vitality—as dying from fright, etc. There is no difference in the rule, that the defendant cannot contract

against its own negligence. *Gray v. Packet Co.*, 64 Mo. 47.

II.   In the construction of stock pens, and in affording the means of transportation, the carrier should be held to that degree of diligence that a prudent man would exercise in such matters. *Railroad v. Hedges* [Ky. Ct. App.] 13 Am. Law Reg. 145 ; Hutch. Carriers, 88 ; *Willoughby v. Horridge*, 2 Am. Law Reg. [o. s.] 61. Shearm. & Redf. on Negl., sect. 447 ; *Lewis, Adm'r, v. Railroad*, 59 Mo. 495 ; *Howenstein v. Railroad*, 55 Mo. 33.

III.   *Reception of hogs* in pen of company is equivalent to an obligation to *forward them* without delay. *Pruitt v. Railroad*, 62 Mo. 527 ; Wood's Brown on Carriers, sect. 87, p. 157 ; Hutch. Carriers, p. 68, sects. 89, 90, 91.   Stock was delivered at the usual place for receiving such freight, and at the time and place ordered by agent of defendant. *This is delivery.* 2 Redfield on Railways [5 Ed.] p. 53, sect. 174.   And it makes no difference whether any bill or any entry in the books of the company is made. *Ib.;* Hutch. Carriers, sect. 97, p. 74 ; sect. 99, p. 76.

IV.   The fact that the owner *accompanies the goods,* to keep an eye upon them, will not excuse the carrier. *Ib.* ; Hutch. Carriers, sect. 100, p. 76 ; Lawson on Cont. Carriers, sect. 23, p. 22, and cases therein cited.   Where, by contract, owner took the risk of damage "in loading, unloading, conveyance and otherwise"—bottom of car dropped out, company held liable. *Ib.*, sect. 185, pp. 252–3 ; sect. 208, p. 266.   Owner's contract to load and take care of stock makes no difference. *Railroad v. Hedges, supra.* ; 13 Am. Law. Reg. 148.   The company could only *exonerate* itself, when owner goes with stock to take care of it, by showing that the injury occurred by reason of some inattention to the duties so undertaken.   Lawson on Cont. Carriers, sect. 23, p. 22, and cases therein cited.

V.   Plaintiff's *knowledge* of defective condition of pens

cannot bar his right of recovery. If so, all the defendant need do is to advertise to the world that its stock pens, depots, platforms, road-bed and rolling stock are all in a dilapidated and unsafe condition, bring it to the people's knowledge and escape all liability for injuries caused thereby. *Smite v. St. Joseph*, 45 Mo. 449.

W. A. Martin, in reply.

I.   Railroad corporations are creatures of the statute. There is no provision of the statute requiring them to furnish pens to put live stock in, while waiting shipment. The fact that plaintiff *knew* the pen was out of repair, leaves him to act at his peril.

II.   If there is anything for the shipper to do before the freight is ready to be carried, there is no *delivery*. 2 Rorer on Railroads, 1279.

III.   Plaintiff is, at least, guilty of contributory negligence. If he could, by diligence, have prevented the injury, he cannot recover (86 Mo. 104), and, in using the pens without objection, he assumed the risk of damage.

Ellison, J.—The plaintiff brought his action against the defendant as a common carrier, the following being the material portions of the petition in the cause :

" That defendant, as such common carrier, contracts and undertakes to transport live stock from said city of Moberly to said city of Chicago, and, for the purpose of transporting live stock, as aforesaid, it is, and was, at the dates hereinafter mentioned, the duty of defendant to provide, at said city of Moberly, suitable stock pens for the purpose of holding, receiving and containing live stock while waiting for, and being loaded on, the cars of defendant. Plaintiff states that, on the seventeenth day of September, 1883, he contracted with the defendant, through its agent, at the city of Moberly, aforesaid, for the shipment of eighty-two head of fat cattle from said city of Moberly to the city of Chicago aforesaid ; that

the defendant, through its agent as aforesaid, directed plaintiff to bring his cattle on afternoon of said seventeenth day of September, 1883, and put them into defendant's stock pens, which were pointed out to plaintiff by the agent of defendant; plaintiff, in pursuance of his contract, and in accordance with the directions of defendant, by its agent, as aforesaid, drove his eighty-two head of fat cattle into the stock pens of defendant, so pointed out by defendant's agent.

"Plaintiff avers that the stock pens were not suitable for holding and containing live stock, but that said pens were decayed, weak, and rotten, in the posts and planks, and such condition was known by defendant, or might have been known, by the use of ordinary diligence, and, by reason of said pens being in such decayed, weak, and rotten condition, plaintiff's cattle broke out of the same, and, becoming excited, ran and scattered over a great scope of the surrounding country, which caused plaintiff to employ hands, for the purpose of getting said stock back to the defendant's road."

The answer was a general denial.

Defendant objected to any evidence under the petition, for the reason that it did not state facts sufficient to constitute a cause of action. This objection was overruled. Defendant, at the close of plaintiff's case, presented a demurrer to the evidence, which was, likewise, overruled.

The material portion of the plaintiff's testimony was as follows:

"On the seventeenth day of September, 1883, I applied to the agent of defendant, and made arrangements to ship eighty-two head of fat cattle, from Moberly, Missouri, to Chicago, Illinois; he told me to bring them in that evening, and I did so; he showed me where to put the cattle to load them; it was in the Wabash pens; I put the cattle in the pens; it filled the pens pretty full, and they became scared, and, in their crowding around, they got against one side of the pen, and the side fell

over; the posts were nearly rotted off at the ground; the cattle then ran out and scattered over the country; the pen was in bad condition; the posts were rotten, and when the cattle ran against the fence the posts broke off; I had propped the fence with some rails, and we were still at the pen when the cattle broke out; I saw the pen was not very safe, before I put the cattle in, and tried to fix it (the corners were already broke loose), and I tried to prop them up; some of the posts were nearly rotted off at the ground; the company fixed it, by putting in new posts, right away after it fell down.    *    *    *
I brought them to Moberly, the next evening, loaded them, and shipped them.    *    *    *    I always have a written contract with defendant, when I ship stock (the rule is, the shipper loads and takes care of his own stock; sometimes the company furnishes a hand to help load, and, after the stock is put in the cars for shipment, we get our contracts and sign them; I signed no contract, nor got none from the agent, until after the cattle were loaded in the cars, on the evening of the eighteenth of September)."

Defendant prayed the court to declare the law of this case to be as follows:

"The court declares the law of the case to be that the defendant did not become liable, as a common carrier, until the stock had been received by it for shipment, and that the mere placing of the stock in the stock pen, even by the direction of defendant's agent, from which they were to be loaded into cars for shipment, did not constitute a receipt of said stock by defendant."

This was refused, and a finding made for plaintiff. Defendant appeals.

The principal questions presented are, whether the petition states a cause of action against defendant, as a carrier, and, if it does, whether the evidence shows a receipt of the stock by defendant, as a carrier. Each of the questions should be answered in the affirmative.

The petition directly charges plaintiff's agreement

with defendant to ship the cattle, and its direction to plaintiff where he should place them, preparatory to their transportation, and, that, in obedience to such direction, the stock was delivered to defendant in its cattle pens, which, as is charged, it was in duty bound, as a carrier, to provide.

Hutchinson's remarks, on the time when the duty of a carrier, as such, begins, though in regard to freight inanimate, is applicable, in this regard, to live stock. He says (section 89), if the delivery be made at the warehouse, or other place of business of the carrier, for early transportation, he becomes, the moment the delivery is made, a carrier, as to the goods, and his responsibility, as such, at once attaches. "And the general and well-settled rule is, that the liability of the common carrier commences whenever, and as soon as, the goods have been delivered to, and accepted by, him, solely for transportation, although they may not be put immediately *in itinere*, but are, at first, for his own convenience, and preparatory to the voyage or journey for which they are intended, temporarily deposited in his wharf or store-room. In such cases, the deposit is a mere accessory to the carriage, and does not postpone his liability, as a common carrier, to the time when they shall be actually put in motion towards their place of destination." I know of no reason why the principle, thus announced by this author, should not apply to and control the branch of this case

The case of *Pruitt v. Railroad* (62 Mo. 527), was an action against defendant as a carrier. In that case, an instruction, based on the carrier's accepting the hogs in its stock pens, and failing to ship, without delay, was upheld. The petition, while not charging in direct terms, a delivery to defendant, yet, in effect, does so, and in a way not to be misunderstood.

The cattle are charged to have been put in the pens in obedience to the contract for shipment, and the directions of defendant. When the delivery for shipment is

complete, it marks the beginning of a carrier's responsibility. Nor is it necessary that there should be a "written memorandum or entry upon a way-bill," in order to complete the delivery, or to render the carrier liable. Hutchinson, section 100.

It is contended that the evidence shows that plaintiff had knowledge of the insecurity of the pens, and for this reason he should not be allowed to recover. Contributory negligence is not pleaded by defendant, nor was that question raised at the trial, unless it is considered as being embraced in the demurrer to the testimony.

We think that the only contention at the trial was on the point as to the delivery of the cattle and the commencement of defendant's liability as a carrier. But, conceding that the point was properly raised below by the demurrer, yet the evidence, while showing that plaintiff thought the pens not thoroughly secure at the time, shows defendant, through its agent, was present, and pointed out the pens as the place for the reception of the cattle. Such testimony did not justify a demurrer. At most, it was a question for the jury.

In the case of *Potts v. Railroad* (17 Mo. App. 394), an action for damage to stock, on account of a defective car, we held a carrier could not exonerate himself from resulting damage by reason of a breach of his implied duty to furnish suitable means to safely transact his business. And this, though the cars are seen by the shipper, who also attends his stock. It is a matter of common knowledge that railway carriers provide stock-pens as a means of receiving, at their stations, live stock for shipment, and that it is a part of their mode of transportation. The evidence shows such was the fact in this case. I think the rule as to the safety of a car is applicable to the stock pens, each, of course, governed by the uses for which they are intended.

The court of appeals of Kentucky held a carrier liable for injuries to a shipper's horse, resulting from a

defective chute leading from the stock pens.   *Railroad v. Hedger*, 13 Am. Law Reg. 145.

I am of the opinion that the judgment is supported by the law and the evidence; it is, therefore, with the concurrence of the other judges, affirmed.