## HENRY L. DUVENICK, Respondent, v. THE MISSOURI PACIFIC RAILROAD COMPANY, Appellant.

### Kansas City Court of Appeals, April 9, 1894.

1. **Common Carriers:** CONTRACT LIMITING LIABILITY OF: CONSIDERATION: REDUCED RATE. Contracts limiting the liability of common carriers to a certain sum are upheld by the courts, provided they are based upon a valuable consideration; and a reduced rate of freight is a sufficient consideration to support such contract.

2. ———: ———: ———: ———: BURDEN OF PROOF. In order to make a reduced rate a sufficient consideration to support a contract limiting the liability of the carrier it must be shown to be in fact a reduced rate, otherwise the contract is without consideration.

3. ———: REDUCED RATE, WHAT IS: EVIDENCE: LIMITING LIABILITY. It does not follow that because the rate charged in a given contract is the same rate charged everybody who ships under like contracts it is not a reduced rate. If the carrier have in force and for practical application a higher rate for shipments made without contracts for release, than the rate charged in a given contract containing a release, then the given contract has a sufficient consideration to support the release when the reduced rate is given in view of the release, and in an action for damages the defendant can show the reduced rate to support the contract and confine its liability to the amount stipulated therein.

4. ———: NEGLECT TO FEED AND WATER STOCK: INSTRUCTION. In this case it is deemed better that an instruction in regard to negligence in feeding and watering the stock in question should be confined to lack of offering an opportunity for the plaintiff or his servants to feed and water since the contract puts that duty upon him.

#### ON MOTION FOR REHEARING.

5. ———: ———: EFFECT OF OPINION. The foregoing opinion is not intended to limit the plaintiff in another trial to the question of defendant's negligence in not affording him opportunity to feed and water.

6. ———: ———: DUTY OF CARRIER. 'The carrier must, of course, afford the shipper an opportunity to feed and water his stock, by putting the car at the proper place at the proper time; but the

carrier is relieved of any obligation to unload, feed and water by the expressed terms of the contract in suit; and it is competent for a carrier to contract that the shipper shall accompany his live stock and unload, water and feed it.

7. ———: CONDITION OF CAR: APPELLATE PRACTICE. In this case an instruction as to the condition of the car is not reviewed in this court as it was not a matter of complaint here since plaintiff recovered below. The rule as to such instruction is, however, noticed in cases cited in opinion.

*Appeal from the Moniteau Circuit Court.*—Hon. D. W. SHACKLEFORD, Judge.

REVERSED AND REMANDED.

*H. S. Priest* and *Wm. S. Shirk* for appellant.

(1) The court erred in refusing to allow the defendant to prove by the witnesses Higbee and Bay, that there was in force at that time a regular tariff rate for the transportation of car loads of horses between California and St. Louis, when the owner placed a higher value on his horses than $100, and refused to release their value over that sum, or refused to enter into a special contract limiting the defendant's liability, which tariff rate was higher than the rate charged plaintiff and other shippers who signed such special contract and placed a valuation of not exceeding $100 on them. Such evidence was very material as showing a valuable consideration for the making of the special contract, and its exclusion prejudicial to defendant. It in effect annulled the special contract between plaintiff and defendant, and the court, because of its exclusion, permitted plaintiff to recover the actual value of his horses, in one case $250, regardless of the limitation of $100 contained in the contract. By this ruling the court also denied the defendant the right to prove the truth of the recitation in the contract, that $33 per car was a rate lower than the regular rate, while it permitted

plaintiff to dispute its truth. This was error. Lawson on Carriers, secs. 212, 213; *McFadden v. Railroad,* 92 Mo. 343, 349, *et seq.*; *Harvey v. Railroad,* 74 Mo. 538; *Hart v. Railroad,* 112 U. S. 331. If supported by a good consideration, such stipulation is almost universally held binding. See authorities, *supra.* (2) Even if plaintiff did request the defendant to unload and feed and water his horses at Chamois, the defendant is not liable for having failed to do so, for three reasons: *First.* There is nothing in the special contract which obligated the defendant to do so. To the contrary, the contract obligated the plaintiff to unload and reload the horses at feeding points. Under such circumstances defendant is not liable for failing to do what the plaintiff himself was bound to do. *Cragin v. Railroad,* 51 N. Y. 561; *Penn v. Railroad,* 49 N. Y. 204; *Bankard v. Railroad,* 34 Md. 197. For the same reason, it was error to refuse defendant's seventh instruction. *Second.* Such request was not a reasonable one. According to plaintiff's own statement, at the time he requested them unloaded and fed and watered at Chamois, they had been aboard the car only twenty-one and one-half hours at furthest, and when they arrived at St. Louis they had only been aboard twenty-seven and one-half hours. They left California at 2:15 to 2:30 o'clock in the afternoon. They arrived in St. Louis the next afternoon at 6 o'clock—twenty-seven and one-half hours—which is one-half hour less than the time limited by the federal statute, Revised Statutes, United States, section 4386. *Third.* The petition does not allege, nor does the evidence show, that defendant did not furnish plaintiff proper facilities for unloading, feeding and watering his horses. This is all it was bound to do, under any circumstances. It was plaintiff's business, under the contract, to unload, feed and water the same, and reload them. The evidence does

not show that he offered to do this, but only that he demanded that defendant should do it. A failure or refusal to do that which the plaintiff himself was bound to do, can not be made the basis of liability against the defendant.

*Moore & Williams* for respondent.

(1) We do not understand it to be the law in a case like this, that the defendant can shield itself from the results of its negligence, even in the furnishing of a defective car. Doubtless the plaintiff thought, by the inspection he gave the car before loading, that it would answer after he had repaired it, and it doubtless would have done so had the horses been unloaded at Chamois. *Mason v. Railroad*, 25 Mo. App. 473; *Potts v. Railroad*, 17 Mo. App. 394. The latter case is specially in point, the shipping contract, as to the car, being nearly identical with the one at bar. It was the duty of defendant to furnish a safe car. A failure to do this is negligence, which the special contract and personal inspection of the car would not condone. (2) The fifth point made by appellant is not well taken, nor are the assumptions of the fact therein true; neither is it true that the court denied the plaintiff the right to prove the truth of the recitations in the contract, that $33 per car was a rate lower than the regular rate. If the defendant was entitled to prove anything on the question of the rate of $33, it would have to come within the terms of the contract that $33 per car was the special rate lower than the regular rates. There was no fraudulent concealment or representation by plaintiff as to the value of the horses, and while they were a somewhat choice lot of horses, they were not of extraordinary or fanciful value. *McFadden v. Railroad*, 92 Mo. 443; *Doan v. Railroad*, 38 Mo. App. 408–423.

(3) The question then is, was it negligence on the part of the defendant's employees that the horses were not unloaded, fed and watered at Chamois, and, if so, did it result in damages to plaintiff's horses as alleged. This was properly submitted to the jury, and defendant can not escape the consequence of the negligence of its servants. *Whiting v. Railroad*, 101 Mo. 632; *McFadden v. Railroad, supra; Ball v. Railroad*, 83 Mo. 575; *Sturgeon v. Railroad*, 38 Mo. 569; *Doan v. Railroad*, 38 Mo. App. 408; *Douglas v. Railroad*, 65 Mo. App. 474. The company must do everything necessary to the proper care of stock carried. *Railroad v. Adams*, 42 Ill. 474; *Railroad v. Hamilton*, 76 Ill. 393.

ELLISON, J.—On trial of this cause plaintiff recovered damages from defendant for negligent transportation of a car load of horses from California, Missouri, to St. Louis. The negligence complained of, as narrowed down by the instructions, consisted in a refusal to water and feed the horses or to permit plaintiff to water and feed them.

The stock was shipped under a special contract which recited that the rate therein agreed upon was a reduced rate and that in consideration thereof the shipper released defendant from much of the obligation it would otherwise have been under without the contract. The delay here was caused by a washout and floods, which were released by the contract. But while the delay was finally conceded by plaintiff to have been excusable he charged that he should have been permitted, while the train was detained at Chamois, to feed and water the horses, and that in consequence of not doing so they were damaged and injured—that they became restless, nervous and uncontrollable so that they inflicted injury upon themselves. The contract, however, among other provisions, pro-

vided that no claim for damages should in any case exceed $100, while in this case plaintiff was permitted to show the value of one of the horses (the one killed) was $250. Contracts like this, limiting the liability to a certain sum, are upheld by the courts, provided they are based upon a valuable consideration. *Harvey v. Railroad*, 74 Mo. 538; *McFadden v. Railroad*, 92 Mo. 343.

A reduced rate of freight is a sufficient consideration to support such contract. But it has been decided that unless it be, in fact, shown to be a reduced rate the contract is without consideration. *McFadden v. Railroad, supra.*

In order to show that the rate in this contract was a reduced rate, defendant introduced two witnesses, the local agent and the clerk in his office. The record of this part of the trial shows this condition of affairs, though, perhaps, not in the order in which 1 now state it. The witness stated that this was the usual and customary rate on such shipments when such contracts were signed; and he also stated that he had never charged any other rate, though it clearly appears from the whole of this portion of the record, that the reason he never charged any other rate was because he always took shipments under contracts similar to the one in this case. It clearly appears that in the absence of a contract there was a higher rate. In other words, but for the contract a higher rate would be charged. The witnesses were not permitted to state this in a way fair to the defendant. The defendant asked several questions looking to the same end on this subject and the witnesses were not permitted to answer. The several rulings on this branch of the case were prejudicial to defendant's interests and were against what we conceive to be its rights in the premises. The defendant's contract releasing down to a valuation of $100, is only

valid if based on a consideration of the rate charged
being a reduced rate. If it is the customary or usual
rate without regard to a special contract of the nature
of this one, or if defendant will only ship on such con-
tracts, at the one rate named therein, then it is not a
reduced rate. Defendant, then, ought to be permitted
to show what the courts have said he must show, viz.:
that the rate named in the bill of lading is what it
purports to be, a reduced rate. If we can gather cor-
rectly the idea maintained by plaintiff, it is that since
the rate charged here is the same rate charged every-
body who ships as this plaintiff shipped, it is not a
reduced rate. This does not follow. Every one who
has signed a contract similar to the one here has gotten
the same rate as charged here. But that may be for
the reason that they signed the contract. It may be,
as was offered to be shown, that there is a different
and higher rate in the absence of a release contract.
If the defendant has two rates, one for release con-
tracts and one without them, and it happens that
shippers invariably choose the less rate with the
release, it does not follow that such rate is the usual
rate charged every one, in the sense in which it is now
being considered. It is so made the usual rate from
the choice of the shipper and not because there is no
other rate. In other words, it can not, with any fair-
ness, be said that for the reason that only one rate is
used under certain conditions, there may not be
another rate in the absence of those conditions. If,
therefore, the defendant, upon another trial, can make
it appear, to the satisfaction of the triers of the facts,
that it had in force and for practical application a
higher rate for shipments made without contracts of
release, then this contract has a consideration to
support it and plaintiff should not be permitted to
recover in excess of $100, for any one animal.

It is perhaps unnecessary to say anything concerning most of the other matters of objection urged by defendant, since the same points in all probability will not arise on another trial, the plaintiff having abandoned most of them as shown by the instructions which omitted from the case all alleged negligence except the failure to give plaintiff an opportunity during the delay of the train to water and feed the horses. There was abundant evidence to support a finding for plaintiff in this respect.

We have discovered no objection to the court's action on instructions, of any substantial nature. Plaintiff's instruction number 2 should be confined to a lack of offering an opportunity for plaintiff himself or his servants to feed and water his stock, since the contract puts that duty upon him. It is not proper to load the instruction with an alternative of what defendant should have done as to feeding, though perhaps under the facts of this case it would not be reversible error.

We discover no error as to the court's ruling either in the evidence or instructions as to the notice of damage. We can see nothing looking to a compromise in the evidence allowed as to conversations with defendant's agent at St. Louis concerning the loss.

The questions in this case are few. If defendant negligently refused plaintiff an opportunity to feed and water at places of delay when such opportunity might have been allowed and the damage and injury resulted from this, plaintiff should recover. As to the amount of plaintiff's damages, if the contract in evidence has a consideration such as we have discussed, then plaintiff's recovery will be limited by the contract.

For the errors mentioned the judgment will be reversed and the cause remanded. All concur.

ON MOTION FOR REHEARING.

ELLISON, J.—Plaintiff seems to be impressed with the idea that we have ruled that he is limited at another trial to the one question of negligence, viz.: That defendant did not afford him an opportunity during the delay of the horses to unload, feed and water them. There is no intimation in the opinion to justify such impression. We stated what is patent from the record, that by the instructions submitted by plaintiff, all of which were given, he abandoned all allegations of negligence except that defendant did not unload, feed and water the stock and did not afford plaintiff an opportunity to do so. This is all that plaintiff asked to be submitted to the jury at the trial. We have not undertaken to say what part of his allegations, if any, he will, or will not, abandon at a future trial.

We also ruled that since plaintiff, by special contract with defendant, agreed to load, unload, feed and water his stock, he should not incumber instructions with a statement as to defendant's duty to do this. Defendant must, of course, afford plaintiff an opportunity to do so, by putting the car at the proper place at the proper time; but it, itself, was relieved of any obligation to unload, feed and water by the express terms of the contract. The case of *Dun v. Railroad*, 68 Mo. 268, instead of being opposed to this view as is insisted by plaintiff, supports it. See instruction 1, at page 270, and the court's remarks, page 277, saying it was a fair exposition of the law. The remarks at page 279, as to the fifth instruction refused, in connection with the instruction itself and the authorities there cited are not as apt, perhaps, as they might have been. The authorities cited have no reference to defendant's duty, notwithstanding exempted by contract to water and feed live stock. It is quite clear the statement of the

learned judge was not intended to mean that which plaintiff now seeks to have it mean. That a common carrier may contract that the shipper shall accompany his live stock, unload, water and feed it, is well settled. Lawson on Carriers, sec. 175; Hutchinson on Carriers, sec. 322; Schouler on Carriers, sec. 479; see, also, 64 Mo. 440; 74 Mo. 163; 83 Mo. 580; 65 Mo. 629.

II. We did not consider the second instruction given as to the condition of the car for defendant for the reason that it was not a matter of complaint here, since plaintiff obtained judgment below. On retrial the rule of law in this regard, as announced in the cases of *Potts v. Railroad,* 17 Mo. App. 394; *Brown v. Railroad,* 18 Mo. App. 569; *Mason v. Railroad,* 25 Mo. App. 480, and *Haynes v. Railroad,* 54 Mo. App. 582, will govern as it may turn out to be applicable under the evidence.