L. S. PADDOCK, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, January 14, 1895.

1. **Common Carriers**: LIMITING LIABILITY: COMMON LAW: CONSIDERATION. A contract releasing a common law liability of a carrier must rest on a sufficient consideration, and, where a reduced rate is claimed as such consideration, it must be shown that a higher rate was legally in force for practical application to all those who refused to enter into the release contract; and where such higher rate is in conflict with the statute, it will not constitute a consideration.

2. ———: ———: ———: STATUTE. Where a higher rate is illegal, the difference between the agreed rate and the maximum legal rate will not be regarded as a consideration for the release contract, especially where neither of the higher rates are posted for public inspection as required by law.

3. **Carriers**: MIXED SHIPMENTS: PRESUMPTION: STATUTE. Though in a mixed shipment of cattle and hogs the presumption is that the loss of hogs was the result of mixed shipment, on the evidence in this case, the jury was authorized to find that the loss of the hogs was not the result of having the cattle in the car, and the statute requires the shipper in such cases to assume such risks as arise solely from such shipments. Held, further, on the evidence, that the car in question was not overloaded.

4. ———: ACTION: STATUTE. Section 2590, Revised Statutes, 1889, in connection with 2597 merely authorizes the injured party to recover for the first offense treble damages and attorney's fee; for the second offense he may recover for himself the same but no more; but in addition to his recovery a penalty for the use of the state may be recovered.

5. ———: STATUTE: ATTORNEY'S FEE: TRIAL PRACTICE. The attorney's fee allowed to the plaintiff by section 2590 is regarded as cost in favor of the prevailing party and no claim need be made therefor, in the petition, but the allowance should be made on motion after the trial.

6. ———: LIMITING LIABILITY: CONTRACT. The plaintiff in this action could not be limited, in the valuation of his stock, to the value agreed upon in the contract, since the contract was invalid.

7. ——: EVIDENCE: CONVERSATION BETWEEN ATTENDANT OF STOCK AND TRAIN MAN. Conversation between an attendant in·charge of a car of live stock and a train man without showing the latter's authority to bind defendant, is inadmissible in evidence, but, as in this case, the conversation merely related to the attendant's effort to get an ax to open a hole in the car, it is *held*, proper. Two other rulings on the admission of evidence are sustained in the opinion.

8. ——: STATUTE: ESTOPPEL. A shipper who knowingly loads his hogs into a car not provided with trap doors, as the statute requires, is not estopped from complaining of injury resulting from the lack of such doors. *Spiva v. Coal Mining Company*, 88 Mo. 73, *distinguished.*

9. ——: MIXED SHIPMENT: INSTRUCTION. An instruction telling the jury if the hogs were not killed by being mixed with the cattle but died from overlying or suffocation, it was the fault of the defendant in not furnishing the proper car, is *error*, as, under the statute, the loss of the hogs must have been occasioned by the absence of trap doors in the car; and on the evidence in this case, it is *held*, the error was not harmless.

*Appeal from the Bates Circuit Court.*—HON. J. H. LAY, Judge.

REVERSED AND REMANDED.

*R. T. Railey* for appellant.

(1) The regular rate for shipping plaintiff's stock to Kansas City from Butler in the thirty-four foot car, without executing the written contract, would have been $23.10. While the amount charged under the written contract was $19.80, making a difference of $3.30 per car. There was, therefore, a special rate given plaintiff in consideration of his having executed the written contract. By the very terms of the contract *supra*, plaintiff and defendant agreed in writing, for a valuable consideration, that, if the hogs were injured from being piled up in the middle of the car, the presumption should be that it was from overloading. (2) The contract, as well as the testimony of plaintiff, shows that sixty-four hogs and five cattle were shipped in the

same car.  There were only two or three poles put up to fence the cattle off, and the bottom pole was eighteen inches to three feet from the floor.  R. S. 1889, sec. 2494.  There not being a syllable of testimony to overcome the presumption arising under the contract, with the plain provision of the statute to the effect that such shipment should be at plaintiff's risk, there was nothing to submit to the jury and the demurrer to the evidence, at the close of the case should have been sustained. *Mathiason v. Mayer*, 90 Mo. 586.  (3) The testimony fails to show that the hogs could not have gotten under the poles and been injured by the cattle.  Nor is there a word in the record tending to show that they were not overloaded, nor is there a scintilla of evidence tending to show that they did not die with cholera or some natural disease.  The cause should be reversed without remanding.  *O'Malley v. Railroad*, 113 Mo. 325; *Perkins v. Railroad*, 103 Mo. 53; *Peck v. Railroad*, 31 Mo. App. 123; *Wintuska's Adm'r v. Railroad*, 20 S. W. Rep. (Ky.) 819; *Megon v. Railroad*, 56 N. W. Rep. (Wis.) 1099; *Marvin v. Railroad*, 47 N. W. Rep. 1123; *Duncan v. Tel. Co.*, 58 N. W. Rep. (Wis.) 75; *Briggs v. Railroad*, 53 N. W. Rep. (Minn.) 1019; *Orth v. Railroad*, 50 N. W. Rep. (Minn.) 363; *Hughes v. Railroad*, 16 S. W. Rep. (Ky.) 275; *Schertle v. Railroad*, 2 Am. & Eng. Railroad Cases (Pa.), 163.  (4) This is a highly penal statute and should be strictly construed.  23 Am. and Eng. Encyclopedia of Law, sec. 8 p. 374; *State v. Bryant*, 90 Mo. 537, and cases cited.  (5) The most casual examination of sections 2590 and 2597 will disclose that, for the first offense, defendant can only be held liable for the actual damages sustained, together with the costs, including a reasonable attorney's fee—if any were asked in the petition—while for the second offense—in addition to the penalty prescribed therefor by section 2590—the plaintiff may

·under section 2597, recover treble damages. A complete remedy is given under section 2590, for any cause of action involving the first offense. Said section, for the second offense affords no remedy whatever. Section 2597 should, therefore, clearly be construed, with reference to the matter under consideration, to apply to the second offense. (6) Instruction number 1 is erroneous, because said instruction ignores plaintiff's knowledge of the condition of said car before his stock was loaded, together with the risk which he assumed on account of accepting said car with knowledge of its condition. *Spiva v. O. C. & M. Co.*, 88 Mo. 68. (7) Plaintiff's instruction number 2 is clearly erroneous, because the jury were told that the presumption which the law raises from shipping mixed stock in the same car, was not conclusive in the case at bar, when there is not a word of testimony in the case, either showing or tending to show, that said hogs were not injured by reason of their coming in contact with the cattle, because said instruction told the jury that, if the hogs were not injured by the cattle, but by overlaying or suffocation, then the fault was that of defendant in not furnishing a proper car for the shipment of the stock. (8) The conversation of plaintiff's son, with someone in the car, was clearly erroneous. *Farber v. Railroad*, 116 Mo. 81. Nor were the admissions of anyone thus made a part of the *res gestæ* and binding upon the defendant. *McDermott v. Railroad*, 73 Mo. 516; *Adams v. Railroad*, 74 Mo. 553; *Hamilton v. Berry*, 74 Mo. 177; *Leahey v. C. Ave. & F. Grs. R'y Co.*, 97 Mo. 170. (9) No attorney's fee was asked in petition. Again, if plaintiff was entitled to an attorney's fee without asking therefor in his petition, then we submit he was bound to introduce his evidence and have the attorney's fee settled by the jury which tried the cause.

*Graves & Clark* for respondent.

(1) Now, our contention is that these rates of $27 and $29.70, last mentioned, are no rates at all under the law and are in direct conflict with the law, and under these schedules the plaintiff was forced to sign a contract or have to submit to a rate higher than that prescribed by law. R. S., secs. 2639, 2674 and 2675. (2) Even if the contract was one founded upon a valid consideration and not void, yet it would not avail the defendant upon the proposition, that, "If any of said stock shall sustain injury or damage while in transit, the presumption is that the same resulted from overloading." This presumption can be removed by showing the actual facts. *Railroad v. Craven*, 20 S. W. Rep. 803. (3) With this evidence the jury were properly entitled to the case for the purpose of drawing the conclusion as to the cause of this loss. *Harned v. Railroad*, 51 Mo. App. 487. It is sufficient if the circumstances in evidence raise a fair inference. *Witting v. Railroad*, 101 Mo. 641. (4) Grant it to be true that a penal statute should be strictly construed, a strict construction of this statute can not relieve defendant of the consequence of the act charged in this petition. R. S., section 2590. (5) The two sections, under consideration are sections of the same statute, and there is a clear provision for trebling the damages. Under section 2590, Revised Statutes, a reasonable attorney's fee is to be taxed up as costs. This is not a part of the debt or damage, but is simply to be taxed up as costs. The petition properly prays for the debt or damages and for costs. This proceeding is the law in this state under statutes of this kind. *Briggs v. Railroad*, 111 Mo. 168; *Dilley v. Railroad*, 55 Mo. App. 123.

ELLISON, J.—This action was instituted under sections 2590 and 2597, Revised Statutes, 1889, for the damage occasioned by the killing of five head of hogs shipped by plaintiff in one of defendant's cars. The loss of the hogs is charged to have occurred while in transit and to have been occasioned by the failure of defendant to transport them in a car with two trap doors in the top or roof of the car, one at each end, as is provided in the first section of the statute above mentioned. There was a verdict for plaintiff which was trebled under the last section mentioned. There was also an attorney's fee of $40 allowed by the court, as costs, under the first section aforesaid. The plaintiff asked and obtained two instructions, which are strenuously objected to by defendant. The defendant asked none, save a demurrer to the evidence, which was refused.

1. The defendant pleaded a written contract of shipment, signed by plaintiff, whereby much of the common law liability which attaches to a common carrier is limited. Defendant claims that the case is controlled, in many important respects, by this contract. Plaintiff, on the other hand, contends that the contract is without consideration, and, therefore, of no validity. A carrier can not, as a matter of right, demand a contract releasing his common law liability. The shipper cannot be compelled to release or surrender any of the rights which accrued to him by reason of the common law duty of the carrier to carry his freight at the risk of the carrier; and if he contracts away any such rights, the contract must be based on a consideration. The mere act of transportation is not such consideration, for that is merely the duty of the carrier, which he can not refuse to perform. The contract itself recites as a consideration a reduced rate of

freight, viz., the sum of $19.80. We are of the opinion that the evidence shows this sum was not a reduced rate, when it is considered from a legal standpoint. That rate was shown to be the regular rate for all parties who signed release contracts; but it is true, as we stated in *Duvenick v. Railroad*, 57 Mo. App. 550, it does not follow from this that there may not have been another regular rate for those who would not execute such contracts. Defendant undertook to do in this case, as was held should have been done in the *Duvenick case*, that is, to show that it had another rate, higher than the one given on release contracts, for those who would refuse to accept such contracts. To do this, it should be shown that such higher rate existed, and was legally in force, for practical application to all those who refused to enter into a release contract. *Duvenick v. Railroad, supra.* The evidence offered in this case (conceding that the recital in the contract that the rate named was a reduced rate made a *prima facie* standing for defendant on that question), shows that there was no other rate in force for application to plaintiff's shipment. The higher rate shown for a car the size of the one here involved, was a rate of one hundred and fifty per cent. of the rate given for release contracts. This would have amounted to $29.70, a sum greater than the maximum rate allowed by statute for such a car. This higher rate was, therefore, an illegal rate, and could not be enforced, and could not be legally applied to a shipment like the one here involved. But defendant says that the maximum rate allowed by law was $23.10, being a difference of $3.30 in favor of the release contract rate, and that the latter sum makes a consideration for the contract. We can not allow any force to this contention, for the reason that the evidence shows this maximum rate, fixed by law, was not the rate which the defend-

ant had adopted for application to shippers who decline the contract. That, on the contrary, it had adopted for enforcement the illegal rate, and thus the shipper was compelled either to submit to an illegal rate or sign a release. It is unfair and illegal to impose such a dilemma on the shipper. It should be also stated that neither of the higher rates here claimed were posted in defendant's depot for public inspection, as required by section 2639, Revised Statutes, 1889.

We, therefore, hold the contract pleaded by defendant as not a defense to this action, under the evidence adduced at the trial, and if the plaintiff's case was founded in the ordinary way upon the loss of his property while being transported by defendant, he would have little to prevent a recovery. But, as before stated, the case is based on the statute, wherein a certain statutory duty in regard to trap doors in the top of the car, was not performed, and, *in consequence* of such failure of duty, plaintiff suffered the loss.

2. Defendant next invokes section 2594, Revised Statutes, 1889, which provides that in mixed shipments of stock, the shipper must assume the risk which arises solely from such shipments. The court instructed the jury that in such mixed shipment of cattle and hogs, the presumption was that the loss of the hogs was the result of the mixed shipment, but that the presumption was not conclusive and might be overcome by evidence. Defendant's contention is that there was no evidence to overcome the presumption. We think there was. It was shown that the cattle were confined in one end of the car by a partition. This partition did not reach to the floor of the car, and, perhaps, left room sufficient for hogs to have gotten in under the cattle. But the testimony tends to show that the hogs were killed "by piling on each other in the middle of the car," and that, when the car was

unloaded at Kansas City, the dead hogs were lying "nearly in the middle of the car." This evidence was ample to authorize the jury to find that the injury was not the result of having cattle in the car. There was also evidence sufficient to authorize a finding that the car was not overloaded, since, among other things, it was shown that the weight of the load was several thousand pounds less than was allowable for a car of the size of this one.

3. It is a further contention of defendant that section 2590 does not authorize an action for failure to put in trap doors; that it only covers an action for a failure to receive, or to transport and deliver live stock. The section is as follows:

"All corporations, private companies or individuals owning or operating any railroad in this state are required to furnish to shippers of live stock suitable and convenient stock cars, without unreasonable delay, with trap doors in the roof thereof, one near each end and upon opposite sides, large enough to conveniently admit a man's body; said trap doors shall be constructed near enough to the sides of the car to enable the shipper to conveniently descend to the interior of said car by means of a ladder or steps, which shall be constructed directly under such door. Such railroad company shall receive live stock for transportation to any place within the state; shall transport and deliver the same to any consignee, stock yard or place to whom or to which it may be consigned and directed. *Provided*, such person, stock yard or place can be reached by any track owned, leased or used, or which can be used by such corporation; and every such corporation shall permit connections to be made and maintained with its tracks to and from any and all stock yards where live stock is or may be kept. Any such corporation neglecting or refusing to comply with the require-

ments of this section shall be liable to all persons damaged thereby for all damages which they may sustain on that account, whether such damages result from any depreciation in the value of the such property by such neglect or refusal to deliver such live stock as directed, or in loss to the proprietor or manager of any stock yard to which it is directed to be delivered, and costs of suit, including such reasonable attorney's fees as shall be taxed by the court; and in case of any second or later refusal of such railroad corporation to comply with the requirements of this section, such corporation shall be by the court, in an action on which such failure or refusal shall be found, adjudged to pay for the use of the people of this state a sum of not less than $1,000 or more than $5,000 for each and every such failure or refusal, and this may be a part of the judgment of the court in any second or later proceeding against such corporation."

Our construction of this section, in connection with section 2597, which merely authorizes the damages to be trebled, is that the injured party can recover for the first offense treble damages and an attorney's fee; for the second offense, the injured party recovers, for himself, the same, but no more than for the first offense. But the recovery for a second or later offense may be, in addition to what the injured party recovers, a penalty of not less than $1,000 or more than $5,000 for the use of the state. This, in our opinion, is the meaning of the statute.

'4. It is, however, alleged that since the petition did not make claim for an attorney's fee, it was error in the court to allow such fee. We are inclined to approve of the court's course in this matter. The statute allows, as a part of the costs, such reasonable attorney's fee as shall be taxed by the court. The fact

that the costs of a case follow the judgment and need not enter into the prayer of the petition, we think, should determine the construction of this particular item. The proper practice is to allow the fee on motion made by the party plaintiff, after the trial proper. In that way, the matter may be properly brought before the court, that it may be ascertained what is a reasonable attorney's fee. A jury trial as to the fee to be taxed was waived by defendant, as was held necessary in *Briggs v. Railroad*, 111 Mo. 168; *Dilly v. Railroad*, 55 Mo. App. 123, live stock cases arising under the statute as to fencing railroads.

6. The next objection to the judgment is that plaintiff should have been limited in valuation to the value of each animal as agreed upon in the contract. We have already shown the contract to be invalid for want of a consideration and plaintiff was thereby left at liberty to show the true valuation.

It would, perhaps, have been improper for plaintiff's son to detail a conversation with one of defendant's train men in the caboose, without, in some way, showing that such person was authorized to bind the defendant by his answers. But the supposed error is technical and harmless when considered in the light of the conversation itself. The conversation only showed an effort on the part of plaintiff's son (he was in charge of the hogs) to get an axe with which he could cut a hole in the top of the car, so as to get at the hogs. It was in every way proper for him to show the effort. It shows what he would have done towards saving the hogs, if there had been trap doors. And it was not improper to show that, in his effort to, in some way, get into the car, he asked one of the train men for an axe.

If it appeared that there was an additional higher rate, not unlawful, for those who refused to sign release contracts, then the question asked of witness Burns

might have been properly admitted as to plaintiff's admission.

There was something in the way of expert testimony from the witness Williams, which seems to us unnecessary, though not reversible error, since it was harmless in its way, under the other evidence in the case. It ought not to be a hard task to prove, by parties who saw the hogs in their condition, as to what probably caused their death.

7. It is insisted by defendant that, since plaintiff knew the car had not a trap door, when he loaded his hogs for shipment, he was now estopped from complaining of an injury resulting from a lack of such doors. This we do not believe. The statute requires that such cars shall be furnished by the railroad company and fixes the penalty for a failure in respect to such requirement. It will not do to say that plaintiff should be bound in estoppel by any act which is not a voluntary election on his part. It will not do to say that he need not have shipped in such a car. He and the defendant, in many respects, are not upon even terms. It may fairly be said that the shipper is at the mercy of the carrier, if the carrier be allowed to violate the law by improper conduct relating to the shipment. While the carrier may say, you need not ship, if my terms do not suit you, practically, the shipper can not say, I will not ship unless your terms suit me. We see no application of the case of *Spiva v. Osage Coal & Mining Co.*, 88 Mo. 73, to this question. That was a question of contributory negligence of Spiva, resulting in his personal injury, and does not bear upon the reason for the rule we have endeavored to state. The mining law required the opening of shafts to be fenced and made a mining company liable to a party injured in consequence of such failure. It was stated by the court that a party may, by his vol-

untary conduct, assume a risk and waive a statute enacted for his benefit. The cases are unlike, and the situation of the respective parties are dissimilar. The mining company owed no duty to furnish employment to any one. No one is under any sort of compulsion to work for a mining company. A common carrier owes a duty to every one of the public—the duty to carry for reasonable compensation. The individual, in a sense, is compelled to accept of whatever is offered him by the carrier and can not refuse it without, perhaps, destroying his interests. It is the carrier's duty to furnish suitable cars for the transaction of his business, and he is liable for an injury resulting therefrom, notwithstanding the shipper is aware of the defect. *Potts v. Railroad*, 17 Mo. App. 394, and authorities therein commented upon. Also *Mason v. Railroad*, 25 Mo. App. 473.

8. We are thus brought to the only substantial error to be found in the case, and that consists in plaintiff's second instruction. By that instruction the jury is in terms told, that if the hogs were not killed by being mixed with the cattle, but died from "overlaying or suffocation," it was by the fault of defendant in not furnishing a suitable and proper car, and the finding should be for plaintiff. This was taking from the consideration of the jury important facts, necessary for them to believe before they could find for plaintiff. Plaintiff was not entitled to a verdict in this case merely from the fact that defendant furnished him a car without the trap doors; nor from the fact that he lost the hogs, nor from both these facts. The loss of the hogs must have been occasioned by the absence of trap doors in the car, and, in order to establish this, the jury must believe that, if there had been trap doors, the man who accompanied the hogs would not only have used them in endeavoring to keep the hogs

from smothering, but that he would have succeeded in his efforts. The effect of the instruction was, to declare to the jury, as a matter of law, that he would have used the doors and would have saved the hogs. In order to avoid reversing a judgment which is based upon what appears, so far as we can gather from the record, to be a meritorious case, we have examined the testimony with a view of ascertaining whether the evidence was so clear, explicit and undoubted as to excuse the assumption of fact implied by the terms of the instruction. But while we find that it might be justly assumed that the attendant would have gotten into the car, if there had been trap doors; and that he would have made an effort to save the hogs, we can, by no means, say that he would have succeeded. Animals are not in a natural condition when huddled together, and being transported on a railway train. They sometimes kill themselves under such conditions. They sometimes kill themselves from their inherent propensities. It is quite probably true that they will sometimes injure and kill each other in the way they were killed here though watched carefully by an attendant. We can not say, as a matter of law, that they will not.

We will, therefore, reverse the judgment and remand the cause. All concur.