SANDY J. HUFF, Respondent, *v.* THE MISSOURI PACIFIC
RAILWAY COMPANY, Appellant.

### April 13, 1885.

1. MEASURE OF DAMAGES.—Value is the price in the locality, in case of
crop, if it had an established price. In the case of a suit for
damages for destroying hay in stacks in a field from fire
caused by sparks from a passing locomotive, where it was shown
by the evidence that hay had an established price in that neigh-
borhood, and was bought and sold there, then the value *in that
locality* was the true measure of damages.

2. NEGLIGENCE.—What constitutes a *prima facie* case in order to
recover damages for fire caused by a locomotive. It has been
uniformly held in this state that a *prima facie* case is made out
against a railroad company when it is proved the fire was com-
municated by sparks from a locomotive engine attached to a
passing train; and that it then devolves upon the defendant to
show that the escape of sparks was not the result of negligence on
its part.—Following *Kenney* v. *H. & St. J. Ry. Co.*, 70 Mo. 243.

3. SAME—PRESUMPTIONS AS TO CAREFULNESS, AND FROM THE USE OF
GOOD MACHINERY NOT INDULGED.—There is no legal presumption
that a railroad company, while in the exercise of its lawful right
to run its locomotive and trains over its road, and to use fire in so
doing, will not permit fire to escape from them. And the fact
that a railroad company uses good machinery and the most
approved appliances to prevent the escape of fire, and has careful
and competent men in charge thereof, will not, in case fire does
escape *of itself* rebut the *prima facie* inference of negligence, or
exempt the company from liability for damages caused thereby.
—Following *Palmer* v. *The Mo. Pac. Ry. Co.*, 76 Mo. 217.

APPEAL from Moniteau Circuit Court, HON. E. L.
EDWARDS, Judge.

*Affirmed.*

The facts are sufficiently stated in the opinion of the
court.

H. S. PRIEST and T. J. PORTIS, for the appellant.

I. The court erred in the admission of evidence of
plaintiff and others, as to the value of the hay, over the
defendant's objections. These witnesses possessed no
legal knowledge of the value of the hay, and what
they "thought" and "believed" it was worth was

wholly incompetent. The theory and rulings of the court as to the proof of the measure of damages for the loss of the hay were too narrow, technical and wanting of justice.—Sedgwick, Meas. Damages (7th ed.)* vol. 1, p. 45.

II. The court improperly admitted evidence in regard to the value of the pasturage on the meadow burned. The charge in the petition is for "grass." The proof was of a measure of damages that is double: first, the loss of pasturage during the fall of 1881, and, second, the permanent injury to the grass on the meadow. Where the whole was destroyed the measure of damages would be the value at the time of destruction, if personal property; if a part of the realty or a recurring spontaneous growth out of the soil, the measure of damages is the difference in value with and without such growth.

III. The court erred in rejecting the evidence of what hay was worth in the neighborhood in December, 1881 (the hay was destroyed in August, 1881), as it tended to show facts from which the jury could form an accurate opinion of the value at the time it was burned. So the opinion of the court in overruling defendant's objections is erroneous and was prejudicial to defendant, and the opinion was not the law.

IV. The court erred in giving and refusing instructions. The first was a peremptory direction to find for plaintiff, unless defendant should show it was not negligent. The jury might *infer as a fact* negligence, but it is not a conclusive presumption of law; or one that shifts the burden of proving a negative on defendant. Instruction No. 2, asked by defendant and refused, correctly defined the issue of vigilance tendered in the plaintiff's petition. Also in refusing No. 5, which correctly declared the measure of damages as to the burning of the meadow grass.

Draffen & Williams, for the respondent.

I. The court committed no error in permitting the plaintiff and his witnesses to testify as to the value of the hay that was destroyed; it was perfectly competent

for them to give their opinions as to its value on plaintiff's farm, at the time it was burned.—Sutherland on Damages, vol. 1, p. 798; *State ex rel., &c.,* v. *Johnson,* 2 Mo. App. 219; *Tate* v. *R. R.,* 64 Mo. 149; *Judson* v. *Easton,* 58 N. Y. 665. Neither was there error in the ruling as to the damage done to the meadow. As to the *value* of the hay, it had reference to the *time it was destroyed* (August).

II. The remarks of the court, in passing upon defendant's objection to evidence, stated correctly the rule as to damages. Yet, if it were otherwise, this court cannot review that matter, as the attention of the court below was not called thereto by the motion for a new trial.—*Burns* v. *Whelan,* 52 Mo. 520; *Griffin* v. *Regan,* 79 Mo. 73.

III. The first instruction given for plaintiff as to what constitutes a *prima facie* case for recovery, is the same as is sanctioned in *Kenney* v. *R. R.* (70 Mo. 243); *Fitch* v. *R. R.* (45 Mo. 327); *Palmer* v. *R. R.* (76 Mo. 217); *Coale* v. *R. R.* (60 Mo. 227).

IV. It was sufficient to allege generally that defendant's servants carelessly and negligently suffered the sparks and fire to escape. The petition in *Kenney* v. *R. R.,* and *Palmer* v. *R. R., supra,* and the instructions given, are the same as in this case.

V. The instructions asked by defendant were erroneous. They omit the essential elements of carefulness and prudence. The fifth instruction as to the damage done to the meadow is palpably wrong. It leaves out of view the loss of the grass crop the year of the fire.

Opinion by ELLISON, J.

This action is for damages resulting from a fire charged to have burned plaintiff's grass, meadow, hay, and fences, and to have originated on the 18th day of August, 1881, by defendant's agents and servants, while running an eastern bound train, carelessly and negligently suffering and permitting sparks and coals of fire to escape from its locomotive; and that by reason of

said negligence and carelessness, the dry grass and combustible matter which the defendant had carelessly and negligently permitted to accumulate on its right of way, became ignited, etc. On the trial plaintiff recovered judgment for $930.00, and defendant prosecutes this appeal, alleging as complaint against the court below the admitting of testimony against it, the excluding of testimony for it, and the giving and refusing of instructions. The instructions given for plaintiff were as follows:

1. The jury are instructed that if they believe from the evidence, that the plaintiff was the owner of the property described in the petition, and that the same was, on or about the 18th day of August, 1881, burned and destroyed, and that the fire which caused the injury sued for was set by or escaped from a railroad engine being run by the defendant on its railroad, *then the jury will find for the plaintiff*, unless the jury further believe from the evidence, that such fire was caused without any negligence on the part of defendant's servants and employes ; and it devolves upon the defendant to show by evidence, to the satisfaction of the jury, that said fire was not occasioned by any negligence on the part of the servants and employes.

2. If the jury believe from the evidence, that the property of the plaintiff described in the petition was destroyed by fire thrown from a passing engine being run by defendant's agents and servants on its railroad, then the fact that fire did so escape and destroy the plaintiff's property will authorize the jury to infer negligence on the part of the defendant, and it devolves upon the defendant to rebut or disprove this inference of negligence, arising from the escape of the fire, and this can be done only by showing by evidence, to the satisfaction of the jury, that the engine from which the fire so escaped, at the time of its escape, was equipped with a good and sufficient spark-arrester, and other appliances to prevent the escape of sparks, and that it was in charge of competent and experienced men, and

that they were managing said engine in a skilful manner at the time of the fire, and that said fire escaped without any fault or negligence of the defendant.

3. The jury are instructed that they are the sole judges of the weight of the evidence and the credibility of the witnesses; and if they believe from all facts and circumstances detailed in evidence, that on or about the 18th day of August, 1881, the defendant's agents and servants, while running an engine over its railroad, did carelessly and negligently suffer and permit sparks of fire to escape from said engine, and that the same burned up and destroyed the property of the plaintiff described in the petition, then the plaintiff is entitled to recover, and the jury will so find.

4. If the jury find for the plaintiff, they will assess the damages of the plaintiff at the value of the property destroyed at the time that it was burned.

Defendant prayed the court to instruct the jury as follows, which instructions the court refused to give:

1. The court instructs the jury that under the pleadings and all the evidence offered in this case, the plaintiff is not entitled to recover, and their verdict must be for the defendant.

2. The court instructs the jury that the only issue of fact for their determination in finding as to the liability of defendant, is as to whether the engine and train of cars were properly and skilfully managed and operated by the defendant's agents, servants and employes; and if they find from the testimony that the engineer in charge of the engine was a competent and skilful person for the discharge of the duties devolving upon him, and that he, as such engineer, carefully and skilfully ran and managed the locomotive at the time the fire was set out, then the jury must find for the defendant.

3. The court instructs the jury that two things must concur in this case to entitle the plaintiff to recover. He must prove negligence on the part of the defendant, and further, that the law presumes that the defendant, while

in the exercise of its lawful right to run its locomotives and trains, and to use fire in doing so, was not guilty of negligence or carelessness in permitting fire to escape from its locomotive, and that in this case the simple fact that the fire did escape and destroy plaintiff's property, if defendant was using good machinery, and the most approved appliances to prevent the escape of fire, and had careful and competent men in charge of the same, is not sufficient to entitle plaintiff to recover in this action.

4. The court declares the law to be that a *prima facie* inference of negligence, because the fire escaped from its locomotive engine, may be fully rebutted by showing that the defendant used the best known and most commonly used machinery and contrivances to prevent the escape of fire to be used at the time, and that competent and careful servants were employed at the time, were in charge of said locomotive engine and machinery, and when such proof is made by defendant, then plaintiff's *prima facie* case is fully rebutted, and before the plaintiff can recover he must introduce in aid of the presumption of negligence arising from the fact of the fire, other and independent acts of negligence before he is entitled to recover.

The chief objection to the testimony was to that in regard to the value of the hay. A consideration of the questions propounded to, and the answers elicited from, plaintiff will perhaps answer all other objections made by defendant in this connection. The following are the questions asked, with the answers given:

Q.—Were you acquainted with the market value of hay in August, 1881, in that locality?

A.—Well, I inquired about it afterwards of men who had hay to sell.

Q.—State whether you were acquainted with the market value of hay in August, 1881?

A.—Well, they were asking twenty dollars a ton for it.

Q.—You may state whether you think you were or not.

A.—Well, I know what they were asking for it.   Yes, sir, I know what they were asking for it.

By the court:   What was it selling for?

A.—Well, I don't know of any selling—selling about twenty dollars a ton, so far as I heard of any sales.   Of course, I hadn't been inquiring before the fire about hay, because I thought I had enough to. do me.

By the court:   I do not think his answer is pertinent to the question.   I think the measure of damages is the value of the hay at the time of the burning.

Q.—(By counsel for plaintiff.)   State whether you were acquainted with the value of hay.   You were a farmer.

A.—Well, *my understanding*, it was twenty dollars at that time; of course, I wasn't buying no hay at that time, but that is what we men were talking about the hay at that time.

Q.—State whether you are acquainted with it or not; whether you know what the value of it is or not; whether you know what hay was selling for at that time?   I am not asking you what it is, I am asking if you are acquainted with the value.

A.—Well, I thought I was.

Q.—Now, state to the jury what you *think* the value of the hay was at that time?

By the court:   I suppose hay is like everything else. It had its market value at the time, and the damage to plaintiff is what the hay was worth at the time it was burned, in the place where it was burned; not in the market or town, but what it could have been sold for there.

To which ruling of the court defendant then and there excepted.

Q.—(By plaintiff's counsel.)   State the value there at that time.

A.—I would say it was worth twenty dollars a ton there at that time.

(*Cross-examination.*)—The witness, on cross-examination, testified that a part of this hay had been reaped in

the summer of 1881, and the other had been reaped the previous harvest, and had remained stacked out during the season, until burned; that altogether there were about forty tons, in his opinion, of the hay.

\* \* \* \* \* \* \* \* \*

Q.—(By defendant's counsel.) Did you ever see any hay sold in the market? Where is your market there for hay?

A.—My market is at home.

Q.—You feed it to your stock?

A.—Yes, sir.

Q.—But I mean the local market for the hay is at Tipton.

A.—When I go there I don't see about the market at all.

Q.—*The local market for hay is at Tipton. When one of you farmers wants to sell a load of hay he generally takes it in to Tipton?*

A.—Yes, sir; or sells it to a farmer.

Q.—If there is a scarcity of hay in the neighborhood he sells it to a neighbor?

A.—Yes, sir.

Q.—But the local market, that is, the ready cash market for hay, when a man wants to get cash for it, he generally takes it to Tipton?

A.—Yes, sir.

Q.—Do you know of any hay having been sold there in Tipton in August, 1881.

A.—No, sir; I don't know of any hay selling.

Q.—How far was this hay from Tipton?

A.—About three miles; to go on the range road, I suppose, would make it about four.

Q.—What is it worth to haul hay from your place to Tipton?

A.—Well, I would say it would be worth $2.50 or $3 a ton.

Q.—To haul it into market?

A.—Yes, sir.

Q.—You don't know, from your own knowledge, from

either buying or selling hay in that neighborhood, what the value of hay was in August, 1881, do you?

A.—Well, all I heard my neighbors talk about buying hay, they were paying twenty dollars a ton.

During the examination of one of the witnesses, defendant's counsel stated the petition of the defence on the question as follows:

Counsel for defendant: "The rule in these cases is that you may locate it where there is a local market for hay. You may locate the market, and fix the distance of the hay in controversy from that market and the increased value of it by the hauling to the market, deducting that from the cost of the hay."

The witness, plaintiff, though getting at it awkwardly, undoubtedly stated that he knew the market value of hay in that locality; that he inquired about it; that it was worth $20.00 a ton, and was selling about $20.00 a ton, so far as he heard of any sales. That such was his understanding from what men were talking about hay at that time. After stating he was acquainted with the value, he finally answers, that, "I would say it was worth $20.00 a ton there at that time. I heard my neighbors talk about buying hay; they were paying $20.00 a ton."

As it was shown that hay had an established price in that neighborhood, and was bought and sold there, then the value in that locality was the true measure of damages. If neighbors were buying hay there and were paying $20.00 a ton for it, that is the price that should govern plaintiff's loss and not the price at Tipton, a distant town.

It is within the observation of all, that there are sections in almost every county in the state, where corn or hay is worth more, and finds a daily, ready sale for more than it will bring at the county seat or at railroad stations. We have nothing to show us but that this particular locality was the only hay producing land for miles around. Suppose, in time of general scarcity of the hay and corn crop, in an entire section of the state, a

particular locality in that section is blessed with large crops, are the people there to be governed by the St. Louis market, when they can find ready buyers all around them at twice that market price? If we should adopt as the rule the suggestion made to the circuit court by defendant's counsel, quoted above, and give plaintiff the price he could get at Tipton, less what it would cost to haul it there; if the price at Tipton was $6 per ton, and it was worth $6 to haul it, he would come out even and get nothing for his pains (if he was fortunate), for if the price of hauling it to town exceeded its value when there (as is sometimes the case), he would be indebted to the trespasser for having opportunely prevented him from taking it to town by kindly setting fire thereto.

Referring to the action of the court in giving and refusing instructions: "It has been uniformly held here (in the Supreme Court) that a *prima facie* case is made out against a railroad company when it is proved the fire was communicated by sparks from a locomotive engine attached to a passing train, and that it then devolves upon the defendant to show that the escape of sparks was not the result of negligence on his part."— *Kenney* v. *The H. & St. J. Ry. Co.*, 70 Mo. 243. "There is no legal presumption that a railroad company while in the exercise of its lawful right to run its locomotive and trains over its road, and to use fire in so doing, will not permit fire to escape from them."

"The fact that a railroad company uses good machinery and the most approved appliances to prevent the escape of fire, and has careful and competent men in charge thereof, will not, in case fire does escape, of itself rebut the *prima facie* inference of negligence, or exempt the company from liability for damages caused thereby."—*Palmer* v. *The Mo. Pac. Ry. Co.*, 76 Mo. 217.

The action of the court in passing on instructions is fully sustained by the foregoing authorities, as well as by the cases of *Fitch* v. *Ry. Co.* (45 Mo. 327); *Coale et al.* v. *Ry. Co.* (60 Mo. 227).

The 3rd and 4th instructions refused omit to mention that the servants may have been experienced and competent, yet they must have been acting prudently and carefully at the time of the fire.

The 2nd instruction entirely omits the condition of the engine or machinery.

We have considered the other objections presented by appellant, and without more particularity we will say the court's action thereon, if conceded to be erroneous, was not of such a nature as to demand a reversal of the judgment.

Judgment affirmed.   The other judges concur.