HUSTON BROTHERS, Respondents, v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, December 2, 1895.

1. **Common Carrier:** STOCK CARS: SHIPPER'S FAULT. Where plaintiffs ordered a certain number of cars for the shipment of live stock, which the carrier with due diligence provided, and after it was too late for the carrier to provide others the shipper ordered another, and when it failed to come, elected after due time for consideration, to ship his stock in a box car found in the train, the carrier will not be held for any injury to the stock shipped in such box car, as it offered to furnish the additional stock car on the next day. *Potts v. Railroad*, 17 Mo. App. 364, *distinguished*.

2. ———: DEFENSE. Whenever the consignor willfully, fraudulently, or in negligent disregard of his duty occasions the loss complained of, the carrier may set this up for his own justification.

*Appeal from the Adair Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED.

*F. W. Lehmann* and *Geo. S. Grover* for appellant.

Upon the undisputed facts in this case, the trial court should have directed the jury to return a verdict for the defendant. Schouler on Bailments, p. 411, 412; Hutchinson on Carriers [2 Ed.], sec. 295c, and cases cited; *Harris v. Railroad*, 20 N. Y. 232; *Betts v. Loan and Trust Co.*, 21 Wis. 80; *Railroad v. Van Dresar*, 22 Wis. 488; *Miltimore et al. v. Railroad*, 37 Wis. 190; *Railroad v. Hall*, 58 Ill. 409; *Coupland v. Railroad*, 55 A. & E. Railroad Cases (Conn.), 380; *Carr v. Schaffer*, 15 Colorado, 48; *Railroad v. Cotton Mills* 35 A. & E. Railroad Cases (Ga.), 602; *Fordyce v. McFlynn*, 56 Ark. 424; *Pratt v. Railroad*, 102 Mass. 557; *Atchison v. Railroad*, 80 Mo. 213; *Myers v. Railroad*, 90 Mo. 98.

*Campbell & Goode* for respondents.

Under the facts in proof it was the duty of the court to submit the case to the jury under appropriate instructions, which was done.    Hutchinson on Carriers, sec. 292; Story on Bailments, secs. 509, 532, 592; *Railroad v. Pratt,* 22 Wallace (U. S.), 123; *Railroad v. Strain,* 81 Ill. 504; *Potts v. Railroad,* 17 Mo. App. 394; *Brown v. Railroad,* 18 Mo. App. 569; *Sloan v. Railroad,* 58 Mo. 220; *Mason v. Railroad,* 25 Mo. App. 473; *State ex rel. v. Hope,* 102 Mo. 410; *Tyler v. Hall,* 106 Mo. 313; *Diel v. Stegner,* 56 Mo. App. 535; *Paddock v. Railroad,* 60 Mo. App. 328; *Blanchard v. Railroad,* 60 Mo. App. 267; *Hance v. Railroad,* 56 Mo. App. 476; Revised Statutes, 1889, sec. 2639.

GILL, J.—This action was brought to recover the damages done certain cattle which the plaintiffs, in December, 1894, shipped over the defendant's road, from Greentop, a small station in Schuyler county, to Miami, a station on defendant's Moberly and Kansas city line.    The negligence charged was that defendant failed to furnish a suitable car for the transportation of the cattle,—that they were loaded into an inclosed box car and carried to Kirksville and during the transit were distressed and damaged for want of air and ventilation.    The evidence quite conclusively shows that the car was not suited for the purpose of safely transporting the cattle, and there was abundant testimony tending to prove injury to the stock by reason of using the car.    The defense, however, most relied on, was that the plaintiffs chose the particular car and were themselves responsible for the damages resulting from its use.

In order to understand the nature of the controversy, and fix the blame where it belongs, it is necessary

to state, as briefly as we can, the circumstances of the shipment. On Saturday, the eighth day of December, 1894, plaintiffs arranged to ship a large number of stock cattle from Greentop and Kirksville (in the vicinity of which they had been purchased), to Miami station, which was a few miles from plaintiffs' farm in Saline county. On the evening of that day (Saturday, December 8) one of the Huston brothers applied to the agents at these stations on defendant's road, for eight stock cars to be loaded and carried south by the same train passing these points on Sunday, the following day. The purpose was to take the cattle from both places through by one train to Miami station, so as to save an extra drive from that point to plaintiffs' farm. Six of these cars were to be placed at Kirksville and two at Greentop. At that time there were but two freight trains daily, each way, between Moberly and Ottumwa, on defendant's road. Of these the north-bound train, number 97, left Moberly every morning at 5:40 and arrived at Kirksville at 11:15 A. M. The south-bound train, number 98, left Ottumwa at 6 A. M., passed Greentop at 1:45 P. M., and arrived at Kirksville at 2:15 P. M. At the terminal points above named, empty cars were, as a rule, kept on hand. On said Saturday evening, the defendant's agents at Greentop and Kirksville sent in the orders above mentioned for the number of stock cars wanted the next day at their respective stations, and the defendant's train dispatcher at Moberly promptly set about to furnish the same. He had information that there were then four empty stock cars at Kirksville. So he sent up from Moberly, by train 97 (which left there at 5:40 A. M.) four cars— two to be left at Kirksville, and the other two for Greentop. These would supply plaintiff's orders; and had it not been for plaintiffs' subsequently changing their plans, the injuries complained of would never

have occurred. The next morning, Sunday, December 9, at about 7 o'clock, according to the witness, S. P. Huston, one of the plaintiffs, and nearly 11 o'clock, according to defendant's agent at Kirksville, the plaintiffs demanded an additional stock car at Kirksville, without changing the Greentop requisition, or nine stock cars in all, instead of eight, as requested on the previous day. This change was made by the plaintiffs without consulting the defendant, and long after its north-bound train had left Moberly, and its south-bound train had left Ottumwa, so that there was no opportunity to comply with the demand, except by using an empty stock car, which was then reported at Queen City, a station a few miles north of Greentop. This defendant's train dispatcher at Moberly endeavored to do, in order to accommodate the plaintiffs, and prevent one car load of their cattle being held over, either at Kirksville or Greentop, until the next day.

Accordingly, the conductor of the north-bound train was directed to leave three empty stock cars at Kirksville, making seven in all at that place, thus filling the order there, and to take the remaining empty stock car in his train to Greentop; and this, with the one to be brought down by the Ottumwa train, would fill the order at Greentop. In the meantime, however, before the train dispatcher could arrange these changes, on account of the shortness of time, the empty stock car at Queen City was taken by another shipper and loaded with stock consigned to St. Louis. So, then, notwithstanding the diligent efforts of the train dispatcher, there was provided at Greentop only one stock car, whereas two were needed. The south-bound train had in it that day a new empty box car, not owned by the defendant, thirty-four feet in length, or four feet longer than the stock cars ordered. The situation was fully explained to Hoops, the agent of plaintiffs, who was

then in charge of the cattle at Greentop, and ample time given him to consider the matter, and decide what to do. Rather than wait another day with one car load of cattle, he finally concluded to and did load plaintiffs' thirty-two cattle in the new box car before described, leaving the side doors open and barricading them with slats or boards. This car was not defective in any particular, but, as already said, it was not as well suited to transporting cattle as was an open stock car. The stock was carried in this car to Kirksville, eleven miles south, where it was transferred to a stock car procured at that point.

Plaintiffs had judgment below and defendant appealed.

In the foregoing statement we have omitted any reference to the court's instructions, as well as any reference to the bills of lading, concerning which points are made in the briefs. A discussion of these becomes unnecessary in view of our conclusion that under the uncontradicted facts of the case, the plaintiffs should not recover. After a thorough consideration of all the evidence, we fail to see wherein the defendant, or its agents, were at fault, or how they can justly be charged with negligence in the matter. We discover no just cause to hold it responsible for damages which the plaintiffs brought on themselves by their own conduct and that of Hoops, their agent in charge of the cattle at Greentop station.

We look at this as practically one transaction—one shipment. On the Saturday evening (December 8), plaintiffs requested defendant's agents at Greentop and Kirksville to get ready for their use the next day, eight cars suitable for carrying stock—two of these to be furnished at Greentop and the other six at Kirksville. This number of cars was not then at these stations, nor was this to be expected. Railroad companies are only

required to do that which is reasonable in such cases. They are, it is true, compelled to provide safe and suitable cars for the transaction of such business as they hold themselves out to do. But this does not mean that the vehicles, of all kinds and sizes, shall always be found at every small station along the lines. It is enough if they are provided at such places within a reasonable time after requisition is made by the shipper. The evidence here conclusively shows that the defendant was prepared, at its depot of supplies in that section, to furnish the required stock cars, and that they were in good condition. The proof, too, is that after the plaintiffs made the demand on the defendant's agents, the evening of December 8, a diligent and *successful* effort was made to supply safe and suitable cars at the points named. But, while these cars were en route, the following morning, plaintiffs changed their plans and demanded an additional car for Kirksville, and defendant's agents set about forthwith to meet this demand. The testimony is that these agents exercised more than ordinary diligence to accommodate the plaintiffs; but in this they failed, and were only able to furnish, on that day, the number first required. They expressed a willingness, however, to supply the additional stock car, if only given a little time—till the next day. Plaintiffs fully understood the situation, and fully understood, too, that the necessary stock car could be had by holding over one car-load of cattle; and yet, to satisfy their own anxiety, to get all the cattle through by the same train, so as to be relieved of the inconvenience of two drives from Miami station, they chose to crowd thirty-two head of cattle into an empty, close box car, found in the train, hoping to carry the cattle safely down the road until they could get a car better suited to the purpose. As already stated, this box car, though new and without blemish,

was not such a car as plaintiffs were entitled to; it was not suited to the carriage of such animate freight. Nor was it intended for that purpose. It was not brought to Greentop station for plaintiff's use; it was unfit for the purpose of carrying the cattle; and all this plaintiffs' agent well knew. Notwithstanding this, said agent took the risk of its use in transporting the cattle the distance of eleven miles down to Kirksville. The plaintiffs, through their agent, voluntarily assumed the risk of that carriage, and they can not now be heard to complain of the defendant, because of the careless act of their (plaintiffs') own agent. *Coupland v. Railroad*, 61 Conn. 531.

Plaintiffs' loss here comes properly under the title of "loss or injury by the act or fault of the consignor of the goods;" wherein it is said that, "whenever the consignor or customer has, under a contract of carriage by himself, or his servants, willfully, fraudulently, or in negligent disregard of his duty as bailor, occasioned the loss complained of, the carrier may set this up for his own special justification." Schouler's Bailments & Carriers [2 Ed.], 421.

Even after the emergency arose—I mean after the shortage of a car had been brought about at Greentop, and caused, too, by plaintiffs' own act—these plaintiffs had clearly the option to wait till next day and secure a suitable stock car, or to take the risk of using the box car then in the train going south. Under the circumstances, their agent thought proper to take the chances of using the box car, and manifestly the plaintiffs must abide the result of that unfortunate choice. No such choice was given in the case of *Potts v. Railroad*, 17 Mo. App. 364. The plaintiff there used the car especially provided for him. The facts of the case at bar are quite different from those of the *Potts* case.

The judgment will be reversed. All concur.