W. S. NICHOLSON et al., Respondents, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, January 10, 1910.

1. CARRIERS: Freight: Vehicles. It is the duty of a common carrier to furnish suitable vehicles for the transportation of the freight shipped and it is responsible for losses occurring in consequence of defects in this regard.

2. ————: ————: Defective Vehicles: Waiver. But where the shipper is afforded the opportunity to select the vehicle in which to transport his goods and he makes such selection with knowledge of its defects, and injury results therefrom, the carrier is not liable.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED.

*W. F. Evans, Dana, Cowherd & Ingraham* and *A. H. Morse* for appellant.

(1) Plaintiffs having had notice that the corn was in a stock car and having failed to object at the time are estopped from objecting now. (2) The plaintiffs are bound by the bill of lading which provides that plaintiffs shall take the risk arising from the corn being loaded in a stock car. (3) Defendant having

contracted to carry this car only to the end of its own line and having stipulated that it would not be liable beyond that point, is liable only for damages proved to have occurred on its own line. (4) The instructions were so contradictory as to compel a reversal of the case. If the foregoing points are well taken the court should have given a peremptory instruction for the defendant at the conclusion of the case.

*Sherman & Fletcher* for respondents.

Plaintiffs had no such notice that the corn in question was being shipped in such a manner as required a protest from them. While upholding the general principles of law as stated in Elliott on Railroads and Hutchinson on Carriers, the courts of this State have also laid down the law that mere knowledge on the part of the shipper of the unsuitableness of the equipment does not relieve the common carrier of its duty to furnish safe and suitable equipment. Sloan v. Railroad, 58 Mo. 220; Potts v. Railroad, 17 Mo. App. 394; Paddock v. Railroad, 60 Mo. App. 328; Mason v. Railroad, 25 Mo. App. 473; Jones v. Railroad, 115 Mo. App. 232.

BROADDUS, P. J.—This is an action for damages, by the shippers against the carrier, to grain, occasioned by failure, it is alleged, of the carrier to provide a proper car for its transportation.

The article was shelled corn and was shipped from Kansas City, Missouri, to Mobile Alabama, February 24, 1903. On the 19th day of said month plaintiffs purchased the corn from the Ernst-Davis Grain Company which was then in a car numbered 49307, on the defendant's track. It had come from a point in Kansas to Olathe by another carrier, where it was transferred to defendant's railroad and from thence to Kansas City. Ernst-Davis Company directed defendant to deliver the car to the plaintiffs for shipment, and at

the same time by request of plaintiffs they directed defendant to place the car containing the corn at the warehouse of McNulty for the purpose of sacking. The defendant placed the car as directed where it was sacked by McNulty, acting for plaintiffs, and weighed by W. E. Hales, deputy weighmaster of the Board of Trade, the plaintiffs in both instances paying for the service. The sacking and weighing was done in the car where the corn was left and the car sealed by the deputy weighmaster.

According to their usual custom plaintiffs by their agent Danciger partly filled in a bill of lading showing the number of the car and its destination. A few days before the shipment and before J. H. Barr, defendant's agent, signed the bill of lading, Danciger called at his office and asked if the car would run through to Mobile. Barr told him that it would, and called his attention to the fact that the corn was loaded in a stock car. Barr testified: That Danciger came to his office and gave him the number of the car; that he called his attention to the fact that the car was a stock car; that he seemed somewhat surprised, and wanted to know how a car of bulk corn could be loaded in a stock car; and that he, Barr, told him that he presumed that the car was boxed up. The bill of lading contained the following: "Owners risk of damage on account of being loaded in stock car." When the corn arrived at its destination it was found to be damaged to the extent of $110. The damage was attributed to the fact that the corn was not sufficiently protected while in transit because a stock car was not sufficient for that purpose. The consignee paid for the corn and plaintiffs seek to recover as assignees.

Plaintiffs recovered judgment and defendant appealed.

The first question is one of liability. It is urged that the court should have directed a verdict of the jury for defendant on the case plaintiffs made out.

The plaintiffs rely upon the common law rule that it was the duty of the carrier to have furnished a safe means, such as a box car, for the shipment of the corn and that having failed to comply with the law it is liable for the damages resulting from its failure of duty in that respect. While defendant admits the rule, it insists that it does not govern this case for the reason that plaintiffs are estopped from claiming its benefits as they after having been informed that the corn was in a stock. car for several days before the bill of lading was signed had a sufficient length of time for them to have had it placed in a box car before the shipment had started for its destination if they had so desired. That their failure to request a reloading of the corn, taken in connection with the agreement in the bill of lading that they assumed the risk of damage on account of the corn being loaded in a stock car amounted to a selection on their part of the character of the car in which it was to be carried, is contended by defendant.

The rule is stated thus: "It is the business of common carriers to have vehicles suitable for the transportation of the freight shipped, and they are responsible for losses occurring in consequence of defects in this regard. But the carrier is the judge of the sufficiency of his carriages in the first instance." [Sloan v. Railroad, 58 Mo. 220.] "A contract though signed by the shipper, agreeing to release the carrier, will not exonerate him from resulting damages or from his implied duty to furnish suitable means to safely transact his business. [Potts v. Railroad, 17 Mo. App. 394.] "A shipper who knowingly loads his hogs into a car not provided with trapdoors, as the statute requires, is not estopped from complaining of injury resulting from the lack of such doors." [Paddock v. Railroad, 60 Mo. App. 328.] The defendant in that case sought to escape liability on the ground that plaintiff by his contract as a consideration for reduced

rate had waived his damages. But the court held, that, that rate was not a reduced rate and that therefore there was no consideration for the agreement. It was contended that plaintiff had nothing to do with selecting the car in question. The defendant selected the car and was liable for damages resulting from its insufficiency.

"A carrier cannot exonerate himself from resulting damage by reason of a breach of his implied duty to furnish suitable means to safely transact his business; and this, though the cars are seen by the shipper, who also attends his stock. The rule is applicable, in principle to stock pens provided by carriers for the receiving of live stock." [Mason v. Railroad, 25 Mo. App. 473.]

Where a shipper examined the car in which his hogs were loaded and recited in the bill of lading that he found it safe and suitable, the carrier was held liable for loss of hogs escaping from the car by reason of its defects. [Jones v. Railroad, 115 Mo. 232.]

A law writer says in reference to exceptions to the rule we have been discussing that: "The rule holding railroad carriers bound to furnish cars adapted to the goods they undertake to transport does not apply where the shipper with means and opportunities of knowledge voluntarily selects the car on which he desires his property transported. The carrier is not responsible in such case for damages resulting from the unsuitableness of the car." [Elliot on Railroads, Vol. 1, sec. 1480.] And the law is similarly stated in Hutchinson on Carriers, Vol. 1, sec. 295. This statement of the law is not in the least in conflict with the holding in Jones v. Railroad, supra, where the shipper inspected a car that had defects which he did not discover. We may safely conclude, that had he discovered the defects and with that knowledge without protest shipped his stock therein the court would have held that he was estopped by his acts from claiming loss

by reason of such defects. In Paddock v. Railroad, supra, although plaintiff had knowledge of the defects in the car, it does not appear that he had any choice in the matter, and was therefore compelled to abide by that selected by the carrier.

In a case where the shipper after due time for deliberation, elected to ship his live stock in a box car instead of a stock car, the carrier was held not to be liable for injury to his stock by reason of injury they suffered in consequence of not being transported in a suitable conveyance. [Huston Bros. v. Railroad, 63 Mo. App. 671.]

Where the shipper knew of the defects of a box car in which his animal was shipped and attempted to rectify them, it is held that it was a question for the jury, where the animal was injured by such defects, to determine from the facts whether the shipper assumed the risks incident to the defects in question, and whether the carrier furnished a suitable car. [Coupland v. Railroad, 61 Conn. 531; 23 Atl. 870.]

In a case, where fruit was shipped in a refrigerator car without ventilation, which was injured in transportation by heat for want of ventilation; and where before transportation the shipper kept the car ventilated by keeping side doors open, but they were so constructed that they could not be kept open for transit and were air tight when closed; and where the car was not designed to be ventilated it was held that the carrier was not liable. [Densmore Commission Co. v. Railroad, 101 Wis. 563; 77 N. W. 904.] ·

Where the consignor was authorized to select cars for transportation of its merchandise and where it made the selection and damage resulted to the articles shipped by reason of the unsuitableness of the car, it is held that the carrier is not liable. [Frohlick Glass Co. v. Railroad, 138 Mich. 116; 101 N. W. 223.] It is clear from the authorities, and it could not well be otherwise, that when a shipper is afforded the opportunity to select

the vehicle in which to transport his goods and he makes such selection with knowledge of its defects, and injury results therefrom the carrier is not liable.   Therefore under the application of this rule the plaintiff was not entitled to recover.   The car containing the corn was transferred to defendant railroad at Olathe and carried thence to Kansas City, and by order of the owners delivered to the plaintiffs.   Plaintiffs with knowledge that it was loaded in a stock car caused the corn to be sacked without removing it, and redelivered it so loaded to the defendant for transportation with the stipulation in the bill of lading mentioned; thus, in the most unmistakable manner indicating to the defendant that they desired the corn to be transported in the stock car.   In view of the facts there is no reasonable grounds for any other conclusion.   As the plaintiffs failed to make out their case it is not necessary to notice other phases of the case.   Reversed.   All concur.