ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. MOREHEAD.    (No. 8916.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 2, 1918. Rehearing Denied Dec. 21, 1918.)

1. CARRIERS �köm219(5) — LIVE STOCK—INJURIES—LIABILITY OF INITIAL CARRIER.

Although initial carrier limited its liability to its own lines, where it did not require connecting carrier to furnish an unloaded car, as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 6688, it was liable, whether injuries to shipment of horses due to defects in its car occurred on its lines or on lines of connecting carrier, in view of articles 708 and 6687.

2. CARRIERS ⊙köm117—FURNISHING SUITABLE CARS—DUTY.

The duty of railway common carriers to furnish suitable cars is absolute, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 6687.

3. CARRIERS ⊙köm219(2)—LIVE STOCK—USE OF CARS OF CONNECTING CARRIERS.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 6687, it is the duty of the connecting carrier to which a loaded car of stock is delivered to receive it as loaded, if suitable, and forward it; the initial carrier having the privilege of furnishing its own cars beyond the end of its line.

4. APPEAL AND ERROR ⊙köm910—ABSENCE OF EVIDENCE—PRESUMPTION.

Where there is no evidence that defendant initial carrier required connecting carrier to furnish an unloaded car, as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 6688, the court on appeal may, in aid of judgment below, assume that defendant's loaded car was delivered to connecting carrier pursuant to an agreement.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by Joe Morehead against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

Thompson, Barwise & Wharton, of Ft. Worth, E. B. Perkins, of Dallas, and George Thompson, Jr., of Ft. Worth, for appellant.

Harris & Burton, of Ft. Worth, for appellee.

---

⊙kömFor other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

CONNER, C. J. Appellee instituted this suit to recover damages to a shipment of one car load of horses from Hamilton, Hamilton county, Tex., to North Ft. Worth, Tex. The contested issue is one of liability. The undisputed facts, which are agreed upon, are to the effect that the appellee was the owner of the horses in question and that he desired to ship them to the Ft. Worth market, and to that end applied to the agent of the appellant company for a car within which to ship the same; that a car was selected by the agent, and that neither the agent nor the plaintiff discovered any defect therein; that the car was loaded with appellee's horses about 5 p. m. at Hamilton, and arrived at the town of Stephenville, Erath county, about 9 p. m. of the same day; that at Stephenville the car and the horses were delivered to a connecting carrier, viz. the Ft. Worth & Rio Grande Railway Company, the line of which extended from Stephenville to North Ft. Worth; that when the horses were delivered to the consignee at North Ft. Worth they were found to have been damaged in the amount of the judgment below.

It was and is admitted that the damage was proximately caused by defects, not necessary to describe, in the car in which the horses had been transported from Hamilton. It is further undisputed that at the time of the shipment from Hamilton appellee entered into a written contract which limited appellant's liability to its own line of road; appellant's undertaking, by the terms of the contract, being merely to transport the horses to Stephenville and there deliver to its connecting carrier. The jury found, in answer to special issues, among other things, to the effect that ordinary care had been exercised at Hamilton in the selection of the car, and that there was no understanding or agreement between appellee and the appellant company that the car selected should be furnished for the entire trip. The written contract is entirely silent on the question.

[1] The question for our determination is whether, under the circumstances, appellant is liable for the injuries caused by the defects in the car, which, it is admitted, existed at the time the car was furnished. We have concluded that this question must be answered in the affirmative.

[2] We are of the opinion that the duty of a railway common carrier to furnish suitable cars for the transportation of freight delivered to it for shipment extends beyond the mere exercise of ordinary care. The duty in this respect, we think is absolute. It is an express requirement of our statute, to be excused only on grounds relieving the common carrier from liability as an insurer. In 4 Vernon's Sayles' Civil Statutes, art. 6687, in prescribing the duties of railway companies, it is among other things, declared to be the duty of every railroad "to furnish

all necessary and suitable cars and vehicles of transportation for all freight offered or tendered, or to be offered or tendered, to it for shipment," etc. See, also, Hunt v. Nutt et al., 27 S. W. 1031; Gulf, C. & S. F. Ry. Co. et al. v. Boger, 169 S. W. 1093; Hutchinson on Common Carriers, § 293; Moore on Carriers, § 12.

Indeed, appellant makes no contention in this case that it is to be excused on the ground that the agent at Hamilton in selecting the car in question exercised ordinary care, or that the company was otherwise not guilty of negligence. The sole contention in this respect is that, inasmuch as there was no agreement or understanding between appellee and the agent of the appellant company to furnish the car beyond Stephenville, and inasmuch as the proof fails to affirmatively show, which is the fact, any injury to appellee's horses while in transit between Hamilton and Stephenville, that the mere fact that the appellee, with the concurrence of the agent of the Ft. Worth & Rio Grande Railway Company at Stephenville, used the same car in the further transportation of the horses, does not create a liability on the part of appellant for the damages proven.

It is true that the written contract executed by appellant at Hamilton fails to specify that the car in question should, or might be, used beyond Stephenville, nor did appellee, in testifying as is stated, specifically so state. But the evidence shows without dispute that appellant had no facilities of any kind or character at Stephenville for loading or unloading freight. It had no agent, employé, or servant at that point; on the contrary, the proof is that for some 10 miles beyond Stephenville it was compelled to use the track of the Ft. Worth & Rio Grande Railway Company to enter the city, and on the occasion in question it so entered and delivered on a side track of the Ft. Worth & Rio Grande Railway Company, the car in question while loaded with appellee's horses. There is no evidence that appellant, through any agent or servant, requested that the horses should be unloaded and placed in another car, or that a protest of any kind was made to the further use of the same. By reference to the article of our statute hereinbefore cited (Vernon's Sayles' Revised Statutes, art. 6687), it may be seen that, for the purpose of facilitating the movement, preservation, and exchange of freight, it is, among other things, further provided that it shall be the duty of a railroad company, not only to furnish suitable cars, but also to transport with reasonable care and diligence all freight tendered to it for transportation, and, in the language of the statute:

"If destined to a point beyond the line of such railroad, then to transport and deliver within a reasonable time such freight in such loaded car or cars to the connecting carrier forming

any part of the route over which such shipment is made, or to be made, for the purpose of transportation by such connecting carrier on to the destination of such freight, or for delivery by it to the connecting line or lines forming any part of the route over which same is to be transported to its ultimate destination; and it shall likewise be the duty of each connecting line of railroad engaged in such transportation, as to all such service to be performed, as to all such freight and cars in which the same is carried within this state, to receive and transport within a reasonable time such loaded car or cars offered or tendered to it, if in a suitable condition for movement, and deliver the same at the destination thereof, if destined to a point upon its line of railroad," etc.

[3] While it has been held that a carrier cannot be compelled to furnish its own cars beyond the end of its own line (see Gulf, C. & S. F. Ry. Co. v. State, 56 Tex. Civ. App. 353, 120 S. W. 1028), yet from the statute we have quoted it is certainly the privilege of a carrier to do so. It was the evident purpose of the Legislature that this should be done, and when a loaded car, as in the case before us, is actually delivered to a connecting carrier, the statute certainly made it the duty of the connecting carrier to receive the car as loaded, if suitable, and forward the freight in the direction of the point of its destination.

[4] The record in this case is silent as to the course of dealing between the appellant railroad and the Ft. Worth & Rio Grande Railway Company in cases of the kind; that is to say, we are not enlightened by the evidence upon what terms, if any, exchange of cars by the companies was made. From the contract we do know that the companies participated in the through rate specified, but whether the appellant company, when it delivered a loaded car of freight to the Ft. Worth & Rio Grande Railway Company required the latter company to furnish appellant with an unloaded car as provided in article 6688, 4 Vernon's Sayles' Stat., or whether there was some mutual agreement fixing a standard of compensation, is not made to appear, and we think, in view of the circumstances already stated, that we may, in aid of the judgment below, safely assume that appellant's loaded car was delivered to the Ft. Worth & Rio Grande Railway Company at Stephenville pursuant to some agreement or arrangement between the railroad companies.

At all events, as before stated, it seems undisputed that the car as loaded was delivered to the Ft. Worth & Rio Grande Railway Company at the time with the knowledge that it was intended for immediate through transportation to Ft. Worth. Under such circumstances, we think, it could well be, and probably was, in contemplation of the servants of the appellant company at Hamilton, at the time he furnished the car, that it would be so used, even though no express agreement covering the subject was made with appellee. This being true, it follows, without the necessity of further discussion, that appellant is liable for the damages proximately caused by the defective car, even though the injuries may have actually occurred on the line of the Ft. Worth & Rio Grande Railway Company, and notwithstanding the contract limiting appellant's liability to its own line of road.

Appellant cannot contract so as to relieve itself of its common-law liability for negligence, either actual or to be imputed by law from a violation of a statute. See Vernon's Sayles' Rev. Stat., art. 708; Hunt v. Nutt, 27 S. W. 1031; Alabama & V. Ry. Co. v. Searles, 71 Miss. 744, 16 South. 255.

We conclude the judgment must be affirmed; and it is so ordered.