## FORT WORTH & D. C. RY. CO. v. HUNT.
### (No. 2181.)

(Court of Civil Appeals of Texas. Amarillo.
Feb. 13, 1924.)

Carriers ⬤⇒121—Carrier not relieved from liability for loss from defective cars by shipper's acceptance thereof and agreement to repair and failure to do so.

Under Rev. St. art. 6687, declaring it the duty of a railroad company operating a line in the state to "furnish all necessary and suitable cars for all freight offered or tendered," a shipper not being afforded any real choice in the selection of cars for shipment of his wheat, but being required to take cars offered or wait an indefinite time for other cars, does not relieve the carrier from liability for loss of grain from defects in the cars by accepting them and agreeing with the carrier to fix them, and then failing to properly do so.

Error from Wichita County Court; Arch Dawson, Special Judge.

Action by J. C. Hunt against the Fort Worth & Denver City Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for plaintiff in error.

W. B. Chauncey, of Wichita Falls, for defendant in error.

BOYCE, J. J. C. Hunt brought this suit against the appellant railway company to recover the value of wheat alleged to have been lost in shipment. The plaintiff alleged that during the months of May, June, July, and August, 1920, he delivered to the railway company for shipment from Harrold, Tex., to Wichita Falls, Tex., wheat weighing in the aggregate something over 2,000-000 pounds; that the railway company lost in transportation about 12,000 pounds of such wheat. The trial resulted in judgment for the sum of $517.01.

The plaintiff arrived at the shortage of wheat by taking the aggregate weights of wheat as it was unloaded into his elevator at Harrold, Tex., all the wheat being shipped to Wichita Falls, deducting an estimated allowance for shrinkage and loss in passing through the elevator and loading, and then comparing this result with the weights of the wheat as delivered at Wichita Falls. At the close of the season plaintiff cleaned up the premises in and about the elevator, and testimony was offered as to the amount of the wheat thus secured, called "clean-up" wheat. In estimating the shortage, the amount of "clean-up" wheat must be taken into consideration. The appellant briefs propositions 1 and 2 on the theory that there were 200 bushels of "clean-up" wheat, while the appellee's brief quotes the record as

showing 200 pounds of such wheat. The statement of facts was originally written to read 200 bushels. As the record now appears, the typewritten word "bushels" has been crossed over by a pen and ink line, and over it is the word "pounds" written in pen and ink. The record shows at one place that this "clean-up" wheat was sold for $5. The evidence will sustain the verdict if the "clean-up" wheat amounted to only 200 pounds; otherwise, it will not. We overrule these propositions, accepting the change in the record as being authentically made.

The serious question in the case is presented by the third proposition, which claims error in the sustaining of a general demurrer to the following allegation of defendant's answer:

"The defendant, for further answer herein, says that it furnished the plaintiff what cars it had on hand at the time and that the plaintiff desired cars faster than it could furnish the same because the plaintiff did not have an elevator in sufficient condition to hold his wheat, and therefore could not keep but a very little on hand, and hence wanted cars faster than the defendant could furnish the same and faster than the law warranted the plaintiff to demand the same, and the plaintiff took some cars which were defective, and the plaintiff knew that they were defective and agreed that if the defendant would allow the plaintiff to use some of its grain doors and other material that he, the plaintiff's agent, would himself fix the cars and thus ship the wheat, and the defendant agreed to allow the plaintiff to fix the defective cars himself and load the same full of wheat, and hence if any of said wheat was lost it was on account of the defective cars which the plaintiff or his agent agreed to accept instead of waiting for other cars and being the same that the plaintiff's agent attempted to fix himself and make do, and therefore by reason of the plaintiff's own agent's neglect or misjudgment the said wheat was lost or destroyed and for which the defendant is not now entitled to pay therefor, but that said loss, if any, was occasioned by the acts and conduct of the plaintiff's own agent."

Article 6687 of the Revised Statutes makes it the duty of every railroad company operating a line of railroad within this state "to furnish all necessary and suitable cars and vehicles of transportation for all freight offered or tendered, * * * to it for shipment," etc.

In the case of G., C. & S. F. Ry. Co. v. Trawick, 80 Tex. 270, 15 S. W. 568, 18 S. W. 948, the Supreme Court held that since the statute required the railway companies to furnish pens for the shipment of cattle, "they cannot absolve themselves from their statutory duty to keep such as are suitable for the business by showing that they were so badly kept or constructed as to make it contributory negligence upon the part of the shipper to use them."

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

In Hunt v. Nutt (Tex. Civ. App.) 27 S. W. 1031, it was held that the railway company could not escape responsibility for damages to a shipment resulting from the unsuitableness of the car in which the shipment was transported "by pleading and proving that the shipper examined the car, and determined as to its fitness to transport his property."

In the case of S. A. & A. P. Ry. Co. v. Dolan (Tex. Civ. App.) 85 S. W. 302, it was held that a clause in a shipping contract, by which the shipper agreed that the cars furnished were in all things suitable to him, did "not relieve the carrier from liability for defects therein."

In the case of M., K. & T. Ry. Co. v. McLean, 55 Tex. Civ. App. 135, 118 S. W. 163, it was held that—

"Although a shipper may discover before loading a car that it is not suitable for the shipment intended, he will not, on that account, be 'deemed guilty of contributory negligence or of having assumed such risk when he has no means or opportunity of relieving himself of the situation."

In the case of G., C. & S. F. Ry. Co. v. Boger (Tex. Civ. App.) 169 S. W. 1093, cattle in course of shipment escaped from a car because the fastenings were out of repair. The railway company pleaded a contract which provided that the shipper should examine the cars and report any defect, and on failure to do so it should be conclusively presumed that the cars were suitable and the shipper agreed to assume the responsibility for any loss due to any such defect. It was held that the railway company could not, by contract, relieve itself of its statutory obligation to furnish suitable cars and that such a contract would be void.

In the case of St. Louis Southwestern Ry. Co. of Texas v. Morehead (Tex. Civ. App.) 207 S. W. 337, it was said:

"That the duty of a railway common carrier to furnish suitable cars for the transportation of freight delivered to it for shipment extends beyond the mere exercise of ordinary care. The duty in this respect, we think is absolute. It is an express requirement of our statute, to be excused only on grounds relieving the common carrier from liability as an insurer."

Hutchinson, in his work on Carriers (3d Ed. § 497), says that—

The "carrier will be liable (for failure to furnish a suitable vehicle for transportation) unless, with knowledge of the defect, the shipper has assented to the use of the insufficient vehicle."

The Supreme Court of the United States, in the case of Ogdensberg Ry. Co. v. Pratt, 22 Wall. (89 U. S.) 133, 22 L. Ed. 831, approved the charge of the trial court, which informed the jury "that it was the duty of the carrier to furnish suitable vehicles for transportation; that if he furnished unfit or unsafe vehicles he is not exempted from responsibility by the fact that the shipper knew them to be defective and used them; that nothing less than a direct agreement by the shipper to assume the risk would have that effect." Under our statute, and the decisions construing it, we think a "direct agreement" of the nature referred to in this decision would be void.

In the case of Frohlich v. Pennsylvania Co., 138 Mich. 116, 101 N. W. 223, 110 Am. St. Rep. 310, 4 Ann. Cas. 1140, the shipper, a factory, had an arrangement with the railway company, under which it might use for shipment of its own products, without special permission from the railway company, any cars which came to it loaded and which were unloaded by it at its factory. The factory loaded some plate glass in a car which came to it under these circumstances, and loss resulted because of the unsuitableness of the car for the transportation of such material. It was held that the railway company was not responsible. There is distinction between that case and this, in that the car was never tendered by the railway company to the shipper for loading with glass. The selection of the car for that purpose was solely the act of the shipper.

In the case of Otrich v. St. Louis, I. M. & S. Ry. Co., 154 Mo. 420, 134 S. W. 665, the shipper accepted a car that was unsuitable and himself attempted to repair it, rather than wait until the next day for a suitable car, which the railway agent promised him would then be furnished for the shipment, and it was held that the damages resulted from the shipper's "own act and he cannot hold the defendants responsible for the defects." The only difference between that case and this is that the railway company in that case itself called the attention of the shipper to the defects in the car and requested the shipper to wait until the next day for a suitable car. In this case it would seem that while the defects were known to both the railway company and the shipper, the railway company was offering the cars for transportation of grain and made no promise as to when other cars might be secured in their stead.

In the case of Cleveland, etc., Ry. Co. v. Louisville Tin & Stove Co. (Ky.) 111 S. W. 358, 17 L. R. A. (N. S.) 1034, it was held (quotation from the syllabus) that—

"Ordinarily, to release a carrier from its liability for failure to furnish proper cars for the transportation of goods, there must be a distinct agreement by the shipper to assume the risk of the sufficiency of the car furnished, or facts must be shown warranting the conclusion that he did not leave the selection of the car to the carrier, but assumed that matter himself."

Other authorities might be cited to support the proposition that when the shipper is given the opportunity of choice and vol-

untarily selects an unsuitable car with knowledge of the defects, the carrier is not liable for damages resulting therefrom. Without further review, we refer to the following additional authorities on this subject: Nicholson v. St. Louis &. S. F. Ry. Co., 141 Mo. App. 199, 124 S. W. 573; 10 C. J. 87; 1 Elliott on Railroads, § 1480.

It will be noted that in some cases outside of this state it seems to be assumed that an express agreement by the shipper to assume the risk of damage due to defects in the vehicle furnished for transportation might be valid. Other cases might be cited from other states which hold that an agreement for examination of the car by the shipper and his acceptance thereof as being suitable is valid. In none of the states which announce such holding did there appear to be an express statute on the subject of furnishing suitable cars—such duty was regarded as imposed by the common law. We take it that agreements of this kind would in this state be held to be void.

One of the exceptions against liability of a carrier, as an insurer, is in those cases where the loss has been "caused by the act of the shipper." Hutchinson on Carriers, § 265 and section 328 et seq. A familiar instance of the application of this exception is where the shipper has himself loaded the shipment or packed the goods for shipment and the loss or damage is the result of improper loading or packing. Since there is no law requiring the carrier to load the goods, in some cases, or pack them for shipment, there would seem to be no reason for holding agreements between the carrier and the shipper as to such matters invalid, and we do not regard cases of this kind as being in point here. However, the shipper did, according to the allegation, undertake to fix the defective cars so that the loss may in one sense be said to result from his own act in failing to properly do this work. While this is true, the cause of the loss originates in the defect in the car in the first instance. The railway company was, by the statute, bound to furnish suitable cars. If there were any defects, then it was the railway company's business to repair them. The pleading does not, we think, show that the plaintiff was afforded any real choice in the selection of cars for the shipment of his wheat. He had to take the cars offered or wait an indefinite time for other cars. When, in order to get his grain shipped, he undertook to do that which the carrier should have done, the railway company ought not thereby to be relieved from its responsibility. It is, we think, against the policy of our law to allow the railway company to put the shipper in this situation and then say to him that the loss of his goods has resulted from his own act.

We therefore conclude that the trial court did not err in sustaining the exception to this paragraph of the pleading.

Affirmed.